UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN R. GIBREE<br><br>    Plaintiff,<br><br>v.<br><br>JOHN E. POTTER,<br>POSTMASTER GENERAL,<br>UNITED STATES POSTAL SERVICE,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)   Civil No. 04-40251-FDS<br>)<br>)<br>)<br>)<br>)<br>) |

**THE DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS OR, ALTERNATIVELY, FOR
SUMMARY JUDGMENT**

**I.     Introduction**

The defendant, John E. Potter, Postmaster General of the United States ("Defendant"), submits this Memorandum In Support Of His Motion To Dismiss Or, Alternatively, Summary Judgment. For the reasons set forth below, the undisputed material facts show that the Defendant is entitled to judgment in his favor.

**II.    Statement of Facts**

1. John Gibree ("Gibree") was hired by the Defendant on or about March 28, 1987. At the time of the incidents in question he worked as a mailhandler in Shrewsbury, Massachusetts at the Central Massachusetts Processing and Distribution Center. ("facility"). (Gibree Aff. attached to complaint March 24, 2004, Aff. ¶ 2 Ex.1)(Gibree attached two affidavitts to his complaint.)

2. On December 29, 2003, the Defendant placed Gibree on emergency off duty

status because he refused to comply with his supervisor's instruction to wear a seat belt while operating a fork lift. (Id. at ¶ 10.) His supervisor then instructed him to leave the Defendant's facility. (Id.) Upon departing that facility, Gibree grabbed his supervisor and stepped on his foot. (Gibree, November 3, 2004, Aff. ¶ 9 Ex. 2.) To be sure, Gibree claims it was an accident and that he only grabbed his supervisor to keep himself from falling. (Id.)

    3.   On September 15, 2004, 230 days after the Defendant terminated his employment, Gibree contacted a United States Postal Service Equal Employment Opportunity ("EEO ") counselor. See Gibree v. Potter, Case No. 1B-016-0006-04, Final Decision (Nov. 11, 2004) (attached as Ex. 3.)

    4.   He alleged to EEO that the Defendant improperly terminated him based on a disability and prior EEO activity. Id.

    5.   On November 23, 2004, Defendant dismissed Gibree's administrative EEO Complaint because he failed to contact an EEO counselor within 45 days of the alleged improper termination, as required by 29 C.F.R. § 16.14105(a)(2)(2004).

    6.   During Gibree's employment with the Defendant, he filed numerous EEO complaints before the Defendant terminated him. (Ex. 2 at ¶ 7)

**III.**      **Argument**

    **A. Standard Applicable to Motion to Dismiss**

When deciding a motion under Fed. R. Civ. P. Rule 12(b)(6), a court must construe the complaint liberally, accept as true all of the factual allegations of the complaint, and draw all inferences in favor of the pleader. See e.g. Acadia Motors, Inc. v. Ford Motor Co., 44 F.3d 1050, 1055 (1st Cir. 1995). A dismissal for failure to state a

claim is appropriate only if it appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.  <u>Rumford Pharmacy, Inc. v. City of East Providence</u>, 970 F.2d 996, 998 (1st Cir. 1992).  The issue is not whether a plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims.  <u>See</u> <u>Vartanian v. Monsanto Co.</u>, 14 F.3d 697, 700 (1st Cir. 1994); <u>Day v. Fallon Community Health Plan, Inc.</u>, 917 F. Supp. 72, 75 (D. Mass. 1996).

Ordinarily, if a court takes any documents into consideration beyond the pleadings, a Rule 12(b)(6) motion to dismiss must be converted into one for summary judgment.  <u>See</u> Fed. R. Civ. P. 12(b).  However, exceptions are made "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint." <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).

### B. Standard for Summary Judgment

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c).  "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant . . . .  By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party . . . . '" <u>McCarthy v. Northwest Airlines, Inc.</u>, 56 F.3d 313, 315 (1st Cir. 1995) (citations omitted).  The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the "nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Celotex, 477 U.S. at 324; Fed.R.Civ.P. 56 (e) ). "This is especially true in respect to claims or issues on which the nonmovant bears the burden of proof . . . ." International Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996) (citations omitted).

### C. The Plaintiff Failed to Timely Contact an EEO Counselor

In 1972 the Civil Rights Act of 1964 was amended to give federal employees the ability to vindicate claims of discrimination in employment based on "race, color, religion, sex, or national origin" via judicial proceedings. 42 U.S.C. § 2000e-16(a). These remedies are exclusive and mandate that the employee first exhaust the pertinent administrative steps prior to resorting to the court for relief. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 94 (1990); Brown v. General Services Administration, 425 U.S. 820, 829-30 (1976). Federal agencies may only be sued under Title VII in federal court if the aggrieved employee has exhausted all available administrative remedies. Lebron-Rios v. U.S. Marshall Service, 341 F.3d 7, 13 (1st Cir. 2003); Misra v. Smithsonian Astrophysical Observatory, 248 F.3d 37, 40 (1st Cir. 2001). Judicial recourse under Title VII, is not a remedy of first resort. Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir.

2003).

The Equal Employment Opportunity Commission ("EEOC") established the mechanisms and deadlines for employees to initiate the administrative process for claims based on discrimination encompassed within Title VII. See 42 U.S.C. § 2000e-16(b). The regulations issued thereunder provide that aggrieved employees must bring the discriminatory events to the attention of an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1)(2004).

Failure to initially contact the counselor within the 45-day term provided by the regulations causes a plaintiff to lose his right to subsequently bring suit. Roman-Martinez v. Runyon, 100 F.3d 213, 217 (1st Cir. 1996); Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990). See also, Velaquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000) (administrative remedies not exhausted since no contact with EEOC counselor within the 45 days as required by the regulations).

Time limitations for instituting discrimination suits are not jurisdictional and are therefore, subject to equitable tolling. Irwin v. Dep't. of Veterans Affairs, 498 U.S. at 96. Similarly, the regulatory time period in which to contact an EEO counselor may be extended based on equitable considerations. Roman-Martinez v. Runyon, 100 F.3d at 220; Jensen v. Frank, 912 F.2d at 521.

It is undisputed that the events which presumably are the subject of this civil complaint[1] were not brought to the attention of its EEO counselor within the 45 days

---

[1]The civil complaint filed by Plaintiff lacks specificity as to the jurisdictional basis for his complaint, except that Plaintiff checked off "Fair Labor Standards Act" on the Court's

provided in the regulation and; hence, should be dismissed.

The limitations period for an alleged discriminatory termination begins to run upon plaintiff being advised of the action. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 108; Campbell v. Bankboston, N.A., 327 F.3d 1, 11 (1st Cir. 2003). See also: Rosario-Rivera v. P.R. Aqueduct and Sewers Auth., 331 F.3d 183, 188-89 (1st Cir. 2003) (employment transfers were a separate and actionable unlawful employment practice); Dressler v. Daniel, 315 F.3d 75, 79 (1st Cir. 2003) (two separate claims with individual limitations period accruing from the denial of prospective employment and termination from employment.)

It is self evident that Gibree knew the Defendant terminated him on or about January 28, 2004. Accordingly, the 45 day notice period commenced to run from that date. Gibree brought this matter to the attention of an EEO counselor for the first time on September 15, 2004, 230 days after his termination and 185 days late. Prior to the events in this matter, Plaintiff initiated EEO proceedings on numerous occasions, and can be presumed to be well aware of the EEO procedural deadlines. Therefore, Gibree's civil complaint should be dismissed for failure to timely exhaust his administrative remedies. Roman-Martinez v. Runyon, 100 F.3d at 217 (1st Cir. 1996); Jensen v. Frank, 912 F.2d at 520 (1st Cir. 1990). See also, Velaquez-Rivera v. Danzig, 234 F.3d at 794 (1st Cir. 2000) (administrative remedies not exhausted since no contact with EEOC counselor within the

---

Civil Cover Sheet, which is clearly inappropriate, since he asserts no facts supporting any sort of claim under FLSA, 29 U.S.C. " 201-219.  Defendant interprets the civil complaint to be a Title VII complaint based on plaintiff's administrative EEO complaint,  which was dismissed by Defendant on November 23, 2004.  The dismissal notice informed plaintiff that he could file a civil action within ninety days of the dismissal.  This action was filed February 15, 2005, within that ninety day period.

45 days as required by the regulations).

**IV**     **Conclusion**

For the foregoing reasons,  the Defendant requests that the Court dismiss Gibree's complaint or, alternatively, enter summary judgment against him

 

For the Defendant,

MICHAEL J. SULLIVAN,
United States Attorney

/s/ Christopher Alberto
CHRISTOPHER ALBERTO
Assistant U.S. Attorney
1 Courthouse, Suite 9200
Boston, MA 02210
(617) 748-3100

OF COUNSEL:

Anna V. Crawford, Esq.
U.S. Postal Service
8 Griffin Road North
Windsor, CT  06006-0170
(860) 285-7309

**CERTIFICATE OF SERVICE**

Suffolk,  ss.                              Boston, Massachusetts
                                           June_1, 2005

I, Christopher Alberto, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing upon Plaintiff, John R. Gibree, 11 Marwood Road, Worcester, Massachusetts 01602.

/s/ Christopher Alberto
Christopher Alberto

EXHIBIT 1

NLRB 5168W (6/96)

Case 1-CA-41615

County of Suffolk

Commonwealth of Massachusetts

## AFFIDAVIT

I, John Gibree, being first duly sworn upon my oath, hereby state as follows:

I have been given assurances by an agent of the National Labor Relations Board that this affidavit will be considered confidential by the United States Government and will not be disclosed unless it becomes necessary for the government to produce the affidavit in connection with a formal proceeding.

1. I live at 11 Marwood Road, Worcester, MA, 01602. My home phone number is 508-756-2898.

2. I worked for the United States Postal Service (USPS) for nearly 17 years. I used to work to in Worcester, and then in 1991 I moved over to Shrewsbury. At the time of my termination, I was a mailhandler; my primary function was to operate a forklift in the distribution center. My rate of pay upon termination was just over $20 per hour, working 40 hours per week, with an additional 20 hours of overtime.

3. In the 1990s, President Clinton signed into law that no one would be permitted to smoke in Federal buildings. It is my understanding that this law applied to all USPS buildings. From about 1996 or 1997, the USPS put up 'No Smoking' signs in my workplace. My coworkers continued to smoke in the workplace. It was just like walking into a smoky bar. As a result of the cigarette smoke, I got really bad headaches. This affected my job performance.

4. The Employee Labor Manual (ELM) was revised on 5-13-93, to incorporate the No Smoking policy in USPS buildings. This prohibition can be found at section 882.1 of the ELM.

5. I called OHSA in Springfield, MA at the beginning of December, 2003. I asked the Agent whether or not they could help me solve this workplace smoking problem. She said that she couldn't help me, that OSHA didn't have a policy on smoking. At that point, I told her that I understood how some people get frustrated with getting the 'run around'. I told her about how one of my co-workers went 'Postal' on a supervisor, where the supervisor was harassing the employee and he turned around and squished the supervisor's eyeball into her head. He got fired and went to jail. The woman that I spoke to was Carol Horowitz, 413-785-0123.

6. A couple of days later, I was confronted by management telling me that I was being put on administrative leave because I was unfit for duty. The supervisor

USPS I-CA-41615

said to me that this was as a result of my call over to OSHA. I subsequently called OSHA in Springfield and in Boston, the OSHA agents told me that the woman that I had originally spoken to had reported my behaviour to Postal Management.

7. On December 5, 2003, I was approached by management, I was handed a document by Dean Gianini, stating that I was on leave until I reported for a fitness for duty test administered by a doctor. I didn't request Union representation at that time. A week later, I made a verbal request

8. I was put on leave for three weeks. I field a grievance with the Union and I heard that I won the grievance.

9. I came back to work on December 27, 2003. Two days later, December 29, I was terminated. I was approached by a supervisor, Joe Fortunado, who told me that OSHA was in the building and they had mandated the USPS to have forklift operators wear seatbelts. I told him "You care about safety now. For 8-10 years I have put in safety suggestions and not one was processed properly. Once management handles them properly then I will wear the belt."

10. Joe gave me the option "then you are not driving the forklift." I told him "I want to see a steward." Joe then reached in between my legs and turned off the forklift. I got off the forklift and went towards the Union office, I said "I cannot believe this." Joe said "why don't you get out of here." I said "what?" He said "go home, leave the building".

11. I approached Mary Ellen Winkelman, my steward and told her that I was being thrown out of work for not wearing my seatbelt. I was heading toward the exit because Joe had told me to leave. Joe said "you have two minutes to leave or I will call 911, the police and have you escorted out of here." Joe continued to yell at me. When I turned to leave the building, I accidentally stepped on Joe's left foot with the right side of my foot. I said "exuse me". He said "you did that on purpose, what are you an asshole." I said, this is totally unfair, you're throwing me out for an unjust cause and without Union representation and that's against the law.

12. When I was told to leave the building, I was not asked anything in my defence. Management just made the decision to throw me out.

13. I was terminated from my employment on January 28, 2004, stating that I would be terminated effective March 1, 2004.

14. I feel that the Employer denied me Union representation by not letting me talk to my Steward. This is not the only time that the USPS has denied me my Weingarted rights. In July 28, 2003, I wanted to work another job, that I was entitled to because of my senority. I made this request verbally to Denette Campbell, she denied that I worked. The next day, I made the same request and she again denied it. The third day, I made the same request. She said that she didn't have to put me on any job, that was her prerogative. I said I want to see a steward. She responded that "You will never see a steward on my tour on overtime."

USPS 1-CA-41615

2

15. I have filed a greivance with the Union. I don't feel that the Union is properly representing me in this matter. All of the meetings have been behind closed doors. I sent requesting that they send me all of the minutes of the meetings and documents relating to my termination. They have not responded to my requests.

I have read this statement consisting of 3 pages, including this page, I fully understand its contents, and I certify that it is true and correct to the best of my knowledge and belief.

*[signature]*
John Gibree

Subscribed and sworn to before me at Boston, Massachusetts on March 24, 2004

*[signature]*
Todd D. Saveland,
Board Agent
National Labor Relations Board

USPS 1-CA-41615

3

EXHIBIT 2

NLRB 5168W (6/96)

County of Suffolk

Commonwealth of Massachusetts

Case 1-CB-10358

# AFFIDAVIT

I, John Gibree, being first duly sworn upon my oath, hereby state as follows:

I have been given assurances by an agent of the National Labor Relations Board that this affidavit will be considered confidential by the United States Government and will not be disclosed unless it becomes necessary for the government to produce the affidavit in connection with a formal proceeding.

1. I live at 11 Marwood Road, Worcester, MA, 01602. My home phone number is 508-756-2898.

2. I worked for the United States Postal Service (USPS) for nearly 17 years. I used to work to in Worcester, and then in 1991 I moved over to Shrewsbury. At the time of my termination, I was a mailhandler; my primary function was to operate a forklift in the distribution center. My rate of pay upon termination was just over $20 per hour, working 40 hours per week, with an additional 20 hours of overtime.

3. I was terminated around January 20, 2004 for misconduct. I filed charges with the NLRB and a grievance with the Union. The Union took my case forward to arbitration and the hearing was held on June 22, 2004.

4. The Union lied to me, they stated that the Employer could not bring up any past disciplines at the arbitration hearing that could be used against me. The Employer brought up several instances my conduct at work. I think that this was used against me. The Union did not object; they just sat there and let the Employer present its evidence.

5. I took the stand at the hearing. I was asked several questions by the Employer about my past conduct. I was surprised by this, since the Union told me that they couldn't ask this. On the stand, I was confused and disoriented. I got upset, and I raised my voice.

6. At the hearing, I did not testify about my grievance filing activities. I did state that I made numerous complaints and that I was being harassed because of it. I testified that the Postal Service was retaliating against me because of my complaints regarding health and safety. I testified about a situation that had occurred where I was arrested and charged with assaulting a Police Officer. These questions were asked by the Employer.

7. I wanted to testify that: I filed numerous 1767s over safety, EEO complaints, Board of Health complaints and that the Employer retaliated against me because I was trying to get outside help to resolve the matter of my unhealthy

National Postal Mailhandlers Union 1-CB-10358

work environment. I did not testify to this, because the Union advised me not to.

8. I testified that I stepped on Joe Fortunado's foot and that I grabbed him because I was trying to prevent myself from falling down.

9. My Union put off the arbitration hearing for several weeks while they waited to get this particular abitrator. Craig Lauzon, my Union representative, said that it was a 'sure win'.

10. The imprint on Joe Fortunado's shoe was obviously done with a light amount of pressure due to the depth of the imprint on the shoe.

I have read this statement consisting of two (2) pages, including this page, I fully understand its contents, and I certify that it is true and correct to the best of my knowledge and belief.

*John R. Gibree*
John Gibree

Subscribed and sworn to before me at Boston, Massachusetts on November 3, 2004

*Todd D. Saveland*
Todd D. Saveland
Board Agent
National Labor Relations Board

National Postal Mailhandlers Union 1-CB-10358            2

EXHIBIT 3

NORTHEAST AREA OFFICE


**UNITED STATES POSTAL SERVICE™**

## UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF:

| | |
|---|---|
| John R. Gibree,<br>Complainant, | )<br>)<br>)  Case NO.: 1B-016-0006-04<br>) |
| v. | )  Filed on November 11, 2004<br>) |
| John E. Potter,<br>Postmaster General,<br>Respondent. | )<br>)<br>) |

### DISMISSAL OF COMPLAINT

This is the Postal Service's final decision regarding the above-referenced complaint of discrimination. In your complaint, you claim discrimination based on your mental disability and in retaliation for prior EEO activity, when (1) on December 29, 2003, you were placed in an emergency off-duty status; and (2) on January 28, 2004, you were issued a Notice of Removal, effective March 1, 2004, charging you with unacceptable conduct.

Equal Employment Opportunity Commission (EEOC) Regulation 29 C.F.R. 1614.105(a)(1) states that an aggrieved person must initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. Further, Section 1614.107(a)(2) of the Commission's regulations states that the agency shall dismiss a complaint that fails to comply with the applicable time limits contained in Section 1614.105.

The Commission has adopted a "reasonable suspicion" standard (as opposed to a "supportive facts" standard) to determine when the limitation period is triggered under EEOC Regulations. See 29 C.F.R. 1614.105(a)(2); See Howard v. Department of the Navy, EEOC Request No. 05970852 (February 11, 1999). Thus, the limitation period is not triggered until a complainant should reasonably suspect discrimination, but before all the facts that would support a charge of discrimination have become apparent. The limitation period begins to run when a person with a reasonably prudent regard for his/her rights would have known s/he was being discriminated against and would not have waited to seek EEO counseling.

The record indicates you sought EEO counseling on September 15, 2004, after your receipt of an Arbitrator's Award dated September 9, 2004 finding the Postal Service had just cause to place you in an off-duty status and to remove you.

6 GRIFFIN ROAD N
WINDSOR CT 06006-7000

**EXHIBIT B**

Page 2

In your complaint, you claim you were suffering from depression during the applicable filing period. Documents on file indicate, however, you filed a claim for unemployment compensation with the Massachusetts Division of Employment and Training on or about January 30, 2004. In addition to filing a grievance, you also filed complaints with the National Labor Relations Board and the American Civil Liberties Union of Massachusetts. Under these circumstances, you suspected discrimination at the time you were placed in an off-duty status and issued the removal notice, and had an obligation to make counselor contact within 45 days.

It is well settled, however, that the Commission has refused to toll the time limits where a claimant attempted to use a separate administrative process. See Volz v. Department of Justice, EEOC Request No. 05950191 (July 12, 1996) (pursuing Freedom of Information Act request does not necessarily toll time limit); Qualls v. Department of the Navy, EEOC Request No. 05950273 (June 7, 1996) (using internal grievance procedure through personnel office does not toll time limit; Mayes v. United States Postal Service, EEOC Appeal No. 01A20152 (January 15, 2002) decision sustained in EEOC Request No. 05A20477 (May 23, 2002) and Schermerhorn v. United States Postal Service, EEOC Request No. 05940729 (February 10, 1995) (pursuing union grievance does not toll EEO limitations period).

In a similar complaint, the Commission determined that the appellant should have known or suspected discrimination was behind the disciplinary action taken upon its issuance because he was alleging retaliation as part of continuing discrimination against him, and the issuance of the discipline should have aroused his suspicion and he was then obligated to make timely counselor contact. See Schultz v. United States Postal Service, EEOC Appeal No. 01981930 (March 2, 1999)

Records on file in the Postal Service's computerized iComplaints EEO Tracking System indicates you sought EEO counseling on six (6) prior occasions beginning September 1994. As a previous participant in the EEO process, you are presumed to be cognizant of the time limitations for making counselor contact and for meeting filing deadlines. See Clarence P. Kader, Jr. v. United States Postal Service, EEOC Request No. 05980473 (June 24, 1999) citing Coffey v. Department of the Navy, EEOC Request No. 05901006 (November 16, 1990).

You have not presented persuasive evidence to waive or toll the time limit for counselor contact. Therefore, your complaint is untimely with regard to EEO counselor contact, and is dismissed in accordance with the regulations cited above.