John R Gibree
Plaintiff

VS

United States Postal Service

Defendant

12/15/05

Case #

4:04-CV-40251-FDS

Motion for quick hearing, for
Due Process of The Law.

Family's Survival Depends
on Hearing A.S.A.P.

To Attorney General of U.S.
Room 206
Harold D. Donahue
Fed. Building + Courthouse
Worcester MA
01608

Mailed To
Attorney General of U.S.
Dept. of Justice
Washington D.C.
20530
To
Yc Christopher Alberto
U.S. Attorney's office

Boston Mass
02200

Federal Bureau of Investigation - Investigative Programs - Civil Rights

**Federal Bureau of Investigation**

Home | Site Map | FAQs

**Contact Us**
- Your Local FBI Office
- Overseas Offices
- Submit a Crime Tip
- File a Cyber Complaint
- More Contacts

**Learn About Us**
- Facts & Figures
- What We Investigate
- Intelligence
- Information Technology
- Fingerprints, Forensics & Training
- Reports & Publications
- History
- More About Us

**Protect Yourself**
- E-Scams & Warnings
- Common Frauds
- More Protections

**Use Our Resources**
- For the News Media
- For Law Enforcement
- For Communities
- For Researchers
- More Services

**Visit Our Kids' Page**

**Apply for a Job**

## Investigative Programs
## Civil Rights
### Federal Civil Rights Statutes

Civil Rights Home |

Hate Crime

Hate Crime Cases

Color of Law

Freedom of Access Entrances

Involuntary Servitude/Slavery

Federal Civil Rights

News and Issues

Title 18, U.S.C., Section 241 - Conspiracy Against Rights

Title 18, U.S.C., Section 242 - Deprivation of Rights Under Color of Law

Title 18, U.S.C., Section 245 - Federally Protected Activities

Title 18, U.S.C., Section 247 - Church Arson Prevention Act of 1996

Title 18, U.S.C., Section 248 - Freedom of Access to Clinic Entrances (FACE) Act

Title 18, U.S.C., Section 844(h) - Federal Explosives Control Statute

Title 42, U.S.C., Section 3631 - Criminal Interference with Right to Fair Housing

Title 42, U.S.C., Section 14141 - Pattern and Practice

### Title 18, U.S.C., Section 241
### Conspiracy Against Rights

This statute makes it unlawful for two or more persons to conspire to injure, oppress, threat intimidate any person of any state, territory or district in the free exercise or enjoyment of or privilege secured to him/her by the Constitution or the laws of the United States, (or bec his/her having exercised the same).

It further makes it unlawful for two or more persons to go in disguise on the highway or on premises of another with the intent to prevent or hinder his/her free exercise or enjoyment rights so secured.

Punishment varies from a fine or imprisonment of up to ten years, or both; and if death res such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an atte commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title or imp for any term of years, or for life, or may be sentenced to death.

Back To Top

### Title 18, U.S.C., Section 242
### Deprivation of Rights Under Color of Law

This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rig privileges, or immunities secured or protected by the Constitution and laws of the U.S.

This law further prohibits a person acting under color of law, statute, ordinance, regulation custom to willfully subject or cause to be subjected any person to different punishments, penalties, than those prescribed for punishment of citizens on account of such person being alien or by reason of his/her color or race.

Acts under "color of any law" include acts not only done by federal, state, or local officials the bounds or limits of their lawful authority, but also acts done without and beyond the bounds their lawful authority; provided that, in order for unlawful acts of any official to be done under of any law," the unlawful acts must be done while such official is purporting or pretending the performance of his/her official duties. This definition includes, in addition to law enforcement officials, individuals such as Mayors, Council persons, Judges, Nursing Home Proprietors Guards, etc., persons who are bound by laws, statutes ordinances, or customs.

Punishment varies from a fine or imprisonment of up to one year, or both, and if bodily injury results or if such acts include the use, attempted use, or threatened use of a dangerous weapon explosives, or fire shall be fined or imprisoned up to ten years or both, and if death results such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

Back To Top

---

### Title 18, U.S.C., Section 245
### Federally Protected Activities

1) This statute prohibits willful injury, intimidation, or interference, or attempt to do so, by force or threat of force of any person or class of persons because of their activity as:

a) A voter, or person qualifying to vote...;

b) a participant in any benefit, service, privilege, program, facility, or activity provided or administered by the United States;

c) an applicant for federal employment or an employee by the federal government;

d) a juror or prospective juror in federal court; and

e) a participant in any program or activity receiving Federal financial assistance.

2) Prohibits willful injury, intimidation, or interference or attempt to do so, by force or threat of any person because of race, color, religion, or national origin and because of his/her ac

a) A student or applicant for admission to any public school or public College;

b) a participant in any benefit, service, privilege, program, facility, or activity provided or administered by a state or local government;

c) an applicant for private or state employment, private or state employee; a member or a for membership in any labor organization or hiring hall; or an applicant for employment through employment agency, labor organization or hiring hall;

d) a juror or prospective juror in state court;

e) a traveler or user of any facility of interstate commerce or common carrier; or

f) a patron of any public accommodation, including hotels, motels, restaurants, lunchroom gas stations, theaters...or any other establishment which serves the public and which is pr engaged in selling food or beverages for consumption on the premises.

3) Prohibits interference by force or threat of force against any person because he/she is been, or in order to intimidate such person or any other person or class of persons from participating or affording others the opportunity or protection to so participate, or lawfully a encouraging other persons to participate in any of the benefits or activities listed in items ( (2), above without discrimination as to race, color, religion, or national origin.

Punishment varies from a fine or imprisonment of up to one year, or both, and if bodily inju results or if such acts include the use, attempted use, or threatened use of a dangerous w explosives, or fire shall be fined or imprisoned up to ten years or both, and if death results such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an atte commit aggravated sexual abuse, or an attempt to kill, shall be subject to imprisonment fc term of years or for life or may be sentenced to death.

Back To Top

---

## Title 18, U.S.C., Section 247
## Church Arson Prevention Act of 1996

Prohibits (1) intentional defacement, damage, or destruction of any religious real property of the religious, racial, or ethnic characteristics of that property, or (2) intentional obstructi force or threat of force, or attempts to obstruct any person in the enjoyment of that person exercise of religious beliefs. If the intent of the crime is motivated for reasons of religious animosity, it must be proven that the religious real property has a sufficient connection wit interstate or foreign commerce. However, if the intent of the crime is racially motivated, th requirement to satisfy the interstate or foreign commerce clause.

Punishment varies from one year imprisonment and a fine or both, and if bodily injury resu any person, including any public safety officer performing duties as a direct or proximate r conduct prohibited by this section, and the violation is by means of fire or an explosive, a under this title or imprisonment of not more than forty years or both; or if such acts include attempted use, or threatened use of a dangerous weapon, explosives, or fire shall be fine accordance with this title and imprisonment for up to twenty years, or both, and if death re such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an atte commit aggravated sexual abuse, or an attempt to kill, shall be fined in accordance with th and imprisoned for any term of years or for life, or both, or may be sentenced to death.

Back To Top

---

## Title 18, U.S.C., Section 248
## Freedom of Access to Clinic Entrances (FACE) Act

This statute prohibits (1) the use of force or threat of force or physical obstruction, to inten injure, intimidate or interfere with or attempt to injure, intimidate or interfere with any perso class of persons from obtaining or providing reproductive health services; (2) the use of fo threat of force or physical obstruction to intentionally injure, intimidate, or interfere with or to injure, intimidate, or interfere with any person lawfully exercising or seeking to exercise Amendment right of religious freedom at a place of religious worship; or (3) intentionally d

or destroys the property of a facility, or attempts to do so, because such facility provides reproductive health services or intentionally damages or destroys the property of a place of religious worship. This statute does not apply to speech or expressive conduct protected by First Amendment. Non obstructive demonstrations are legal.

Punishment varies from a fine or imprisonment for an offense involving exclusively a nonviolent physical obstruction, the fine shall be not more than $10,000 and the length of imprisonment be up to six months, or both, for the first offense: and the fine shall, notwithstanding section be up to $25,000 and the length of imprisonment shall be not more than 18 months, or both subsequent offense; and if bodily injury results, the length of imprisonment shall be up to and if death results, it shall be for any term of years or for life.

Back To Top

---

## Title 18, U.S.C., Section 844(h)
### Federal Explosives Control Statute

Whoever (1) uses fire or an explosive to commit any felony which may be prosecuted in a the United States, or (2) carries an explosive during the commission of any felony which m prosecuted in a court of the United States, including a felony which provides for an enhan punishment if committed by the use of a deadly or dangerous weapon or device shall, in a the punishment provided for such felony, be sentenced to imprisonment for five years but than 15 years. In the case of a second or subsequent conviction under this subsection, su persons shall be sentenced to imprisonment for ten years but not more than 25 years.

Back To Top

---

## Title 42, U.S.C., Section 3631
### Criminal Interference with Right to Fair Housing

This statute makes it unlawful for any individual(s), by the use of force or threatened use of to injure, intimidate, or interfere with (or attempt to injure, intimidate, or interfere with), any housing rights because of that person's race, color, religion, sex, handicap, familial status national origin. Among those housing rights enumerated in the statute are:

- The sale, purchase, or renting of a dwelling;
- the occupation of a dwelling;
- the financing of a dwelling;
- contracting or negotiating for any of the rights enumerated above.
- applying for or participating in any service, organization, or facility relating to the sa rental of dwellings.

This statute also makes it unlawful by the use of force or threatened use of force, to injure intimidate, or interfere with any person who is assisting an individual or class of persons in exercise of their housing rights.

Punishment varies from a fine of up to $1,000 or imprisonment of up to one year, or both, bodily injury results, shall be fined up to $10,000 or imprisoned up to ten years, or both, ar death results, shall be subject to imprisonment for any term of years or for life.

Back To Top

### Title 42, U.S.C., Section 14141
### Pattern and Practice

This civil statute was a provision within the Crime Control Act of 1994 and makes it unlaw any governmental authority, or agent thereof, or any person acting on behalf of a governm authority, to engage in a pattern or practice of conduct by law enforcement officers or by c employees of any governmental agency with responsibility for the administration of juveni or the incarceration of juveniles that deprives persons of rights, privileges, or immunities s or protected by the Constitution or laws of the United States.

Whenever the Attorney General has reasonable cause to believe that a violation has occu Attorney General, for or in the name of the United States, may in a civil action obtain appr equitable and declaratory relief to eliminate the pattern or practice.

Types of misconduct covered include, among other things:

1. Excessive Force
2. Discriminatory Harassment
3. False Arrest
4. Coercive Sexual Conduct
5. Unlawful Stops, Searches, or Arrests

Back To Top

# Fax Transmission Sheet

Pages sent including this cover sheet 24.

Date: 12-1-05

Senator KERRY

Attn:
→ KATIE Joyce

FAX#: 1-617-248-3870

From: John R Gibree
11 MARWOOD Rd Worc. MA. 01602

Tel # (508) 756-2898

FAX# _____

Instructions / Comments: ① Background Info. ② Management Ignored
Hazard Reports. ③ Supervisor out to get me (4r5)
Supervisor Attitude (6A/6D) Info. Union Sent to Jim McGovern
(7Abc) The Truth (8) State Arbritration Case I Won (9A/9E)
information About my Assault (Lie) ⑩ Whistle Blower
(11+12) General Info.

P.S. Sorry About Too many Pages.



UNITED STATES POSTAL SERVICE
Central Massachusetts Mail Processing Center  01546-0001

DATE:  MAY 9, 1995

TO:  POSTMASTER
MANAGER/SUPERVISORS
ALL EMPLOYEES

SUBJECT:  REPORT OF HAZARD, PS FORM 1767

Report of hazard, Unsafe Condition or Practice should be filed when an unsafe incident occurs.

The employee completes section I of the PS FORM 1767.  In the first section you should identify the work area.  Next give a brief description of the hazard. After identifying the hazard recommend a corrective action to remedy the problem. Once this is completed sign your name, date and tour and submit it to your immediate supervisor.

**NOTE:**  However if you desire anonymity, complete section 1, (including your name) and file the report with the Safety Office.  Safety personnel will immediately return the form to your supervisor for necessary action, **and will delete your name from the form to ensure your anonymity.**

Section II is the Supervisor's Action.  It is their duty to investigate the alleged hazard during the same tour of duty in which the report was received. They abate the hazard if it is within the scope of their authority to do so. Supervisor records the action taken to eliminate the hazard or record recommendation for corrective action in section II and signs their name. The Supervisor will then forward the original and yellow copy to their immediate Supervisor, send the pink copy to the Safety Office; and give the blue copy to the employee who filed the report within same date submitted.

**IT IS THE SUPERVISORS RESPONSIBILITY TO MONITOR THE STATUS OF THE REPORT, AT ALL TIMES, UNTIL THE HAZARD IS ABATED.**

Section III is the Approving Official.  The Approving Official determines weather there is reasonable grounds to believe a hazard exists.  If there are no grounds of a hazard they must submit it in writing to the employee within 15 calendar days.  If the hazard was abated by the first line supervisor they will also notify employee in writing and then send the original PS FORM 1767 to the Safety Office.

Section IV is the Maintenance Supervisor.  When the hazard has been completed, signed, date, and return the original PS FORM 1767 to the Approving Official who will then forward it to the Safety Office.

It is everyone's responsibility to work safely and make sure that the equipment and area you work in is a safe work environment.  Please take the time to use the Report of Hazard, Unsafe Condition or Practice Form 1767.


John Robert
Tour 3, Chairman
Safety & Health Committee

John DeLuca
Tour 3, Secretary
Safety & Health Committee





## NATIONAL POSTAL MAILHANDLERS UNION
## DIVISION OF THE LABORERS INTERNATIONAL
## UNION OF NORTH AMERICA AFL-CIO LOCAL-301

August 22, 2002          (02-3104) John Gibree

Arthur LeDoux
MDO, Tour 3
CMP&DC
192 Main Street
Shrewsbury, MA 01546

Mr. LeDoux,

The Union is submitting this letter of corrections and additions in accordance with Article 15.2(i) of the National Agreement.

Management failed to show that the discipline at issue is progressive in nature. Clearly this notice is punitive. M.D.O. Armand Geoffrion purposely antagonizes Mr. Gibree. Mr. Geoffrion has told the Branch President that he is in fact "out to get John". Mr. Geoffrion could have avoided the whole issue had he allowed his floor supervisor to do his job. The step 2 agreement for this facility is "the actual determination of whether a request for documentation is appropriate will be made by the immediate supervisor who will so notify the employee, if necessary." M.D.O. Armand Geoffrion was not John's immediate supervisor S.D.O. Doug Downing was. M.D.O. Arthur LeDoux knows this and should have realized this before concurring on the suspension. Management cites E.L.M. 513.365 in the notice of suspension. What management fails to mention when citing this section is that the manual states "....or AWOL" management had other options before charging Mr. Gibree with AWOL. 

Request for documentation other than for those on restricted sick leave is for the protection of the interests of the Postal Service. Management did not, and has not stated what the "interests of the Postal Service" is that they are protecting. M.D.O. Geoffrion states in the 2608 that he asked John for "acceptable documentation", yet M.D.O. Geoffrion never stated to John what was "acceptable". John wrote on the 3971 why he was going home sick and the reason he was sick. Not all sick leave results in a trip to the hospital. M.D.O. Geoffrion did not ask for "medical documentation".

The union presented a copy of Mr. Gibree's 3972 for the year 2002. This form was printed in July 2002. Under the dates cited in the notice of suspension (July 4 and 5 2002) there is no notice of John being absent, never mind being AWOL. Instead they list only one day, July 3 2002. This is one more reason that the suspension is deficient.

The union is also arguing that Mr. LeDoux should not have been the Step 2 Designee on this suspension. Mr. Ledoux was the concurring official, and then was placed as the step 2 designee. Mr. Ledoux should have excused himself and allowed one of the other Step 2 Designee's to replace him on this one grievance. Due to Mr. LeDoux friendship with Mr. Geoffrion outside of work, this clouds management's impartiality on this particular grievance. Mr. LeDoux did not even bother to conduct a proper investigation before concurring. One of the obligations of management is to have given the employee his "day in court"

had Mr. LeDoux given John his day in court, or a pre- disciplinary interview, then this whole situation could probably been avoided. Instead, M.D.O. Geoffrion is fulfilling his statement of "getting John".

Craig Lauzon
Branch President
Branch 127
Mail Handlers Local 301
CMP&DC
192 Main Street
Shrewsbury, MA 01546

Important



# Local 301, Mail Handlers Union
## Division of the Laborers' International
## Union of North America, A.F.L.-C.I.O



.ocal 301    *Professional Supervision History Item 4*    NEW ENGLAND



6/15/93

HEADQUARTERS:
38 CHAUNCY STREET, SUITE 802
BOSTON, MA 02111-2301
Telephone: (617) 426-4616
Fax: (617) 423-1727

At approximately 10:05 p.m. I (David West-union steward) approached supervisor Armand Geoffrion in regards to mailhandler Sharon Scirpoli being emotionally distraught. Armand proceeded to tell me how these no-good bitches were useless, unofficially, he laughed. I then told Armand that every thing being said was official as I was investigating this problem as an official of the Mailhandlers Union. Supervisor Geoffrion told me he didn't give a shit and he was tired of lazy workers, especially these silly cunts. I told Supervisor Geoffrion I was under the impression that dignity and respect towards workers was taking a precedent in the Postal Service. He replied that he didn't care about that and he was going to move the mail anyway he saw fit, contract or no contract. His statement at this point was "Write a fucking grievance". He then told me he can do anything once even if he knows it is wrong. I told Supervisor Geoffrion that this was not how things worked. He shouted "Fuck it. Tell the plant manager because I really don't give a shit." Supervisor Geoffrion's attitude is "I am king and the rest of the people working here are dog shit." This is the second major incedent in one month involving Armand Geoffrion in a confrontation with mailhandlers in totally showing no respect to the person whatsoever. If Supervisor Geoffrion doesn't wish to work together with the Mailhandlers Union as other supervisors are doing in the hopes of improving our working lives, then he should be granted permission to return to the craft he came from.

*David A. West*

David West
Steward-Tour 1
Local 301
NPMHU

NEW ENGLAND

HEADQUARTERS:
38 CHAUNCY STREET, SUITE 802
BOSTON, MA 02111-2301
Telephone: (617) 426-4616
Fax: (617) 423-1727

6/15/93

Supervisors Geoffrion and Walsh used profanity when describing

the female mailhandlers in question, calling them "fucking

cunts". Ex.: "Those two fucking cunts will do as they are

told."

David Flint
Steward-Tour 3





## NATIONAL POSTAL MAILHANDLERS UNION
## DIVISION OF THE LABORERS INTERNATIONAL
## UNION OF NORTH AMERICA AFL-CIO LOCAL-301

8/7/03

Joe Bisceglia
District Representative
Congressman McGovern
34 Mechanic St.
Worcester MA. 01608

Joseph Bisceglia:

     Enclosed you will find all the documents that deal with Mr. John Gibree and his situation here at the Central Mass. Mail Processing and Distribution Center in Shrewsbury Ma. I have numbered each item so that you can refer to each one.

     I have also enclosed a narrative so that you can be aware of what happened at all steps of our investigation.

     If I can be of any more assistance, please do not hesitate to call me. I can be reached at the Union Office at (508) 793-5179.

Thank you,

Craig Lauzon
Branch President
Branch 127, Local 301
National Postal Mail Handlers Union
192 Main Street
Shrewsbury Ma.
01546


cc:
Robert Losi
File



 **UNITED STATES POSTAL SERVICE**

**Date:** July 9, 2002

**Our Ref:** 236:AALEDOUX:aal:7063
**Subject:** Emergency Placement in Off-Duty Status

**To: John R. Gibree**
**SS# 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**
**FTR Mailhandler NPMHU**
**CMPDC**
**Shrewsbury, Ma. 01546-0001**

**VIA CERTIFIED MAIL NO. P 818 098 220**
**& CERTIFICATE OF MAILING** ( or for hand-to-hand delivery, use acknowledgement below)

In accordance with the Emergency Procedure contained in Article 16 of the National Agreement, you are hereby notified you were placed in an off duty status, without pay, effective 20:30 Tuesday July 9, 2002. You will remain in this status until you are advised otherwise.

This action is taken because of the nature of the allegations made against you concerning your conduct on 07/09/02. Mr. Gibree was visibly upset, so much so that he went on the intercom and started stating derogatory remarks about Postal Management .

A further decision shall be made as to whether or not discipline shall be issued to you for the alleged misconduct. That decision shall be forthcoming in the near future.

You have the right to file a grievance under the Grievance/Arbitration procedure set forth in Article 15,Section 2, of the National Agreement within fourteen (14) days of your receipt of this notice.

In accordance with the National Agreement, Article 16.7. An employee placed in an off-duty status under the Section may utilize his or her accurred annual leave during this period.

Paul Gregoire
Supervisor Distribution Operations
CMPDC
Shrewsbury, Ma

cc: Mailhandlers Union
    Labor Relation
    Ed Stelmach
    Arthur LeDoux



CENTRAL MASSACHUSETTS
PROCESSING & DISTRIBUTION CENTER



*perjery*

August 8, 2002

**Fourteen (14) Calendar Day Suspension**

John R. Gibree        SSN: 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
Full Time Mail Handler
CMPDC Shrewsbury, MA 01546-9998

You are hereby notified that you will be suspended for a period of fourteen (14) calendar days, beginning on August 31, 2002 through September 13, 2002 inclusive. You are to return to duty on your next regularly scheduled tour of duty thereafter. Should a timely grievance be initiated, the effective date of the suspension will be delayed until after the Step 2 decision has been rendered.

CHARGE:    FAILURE TO SATISFACTORILY PERFORM YOUR DUTIES IN THAT
           YOU EXHIBITED UNACCEPTABLE CONDUCT

Specifically, on Tuesday, July 9, 2002 at approximately 20:10 hours, you exhibited aggressive behavior towards Armand Geoffrion, Manager, Distribution Operations, by calling him a "fucking asshole" and bumping him with your hip. Later that same day, at approximately 20:25 hours, as you were passing each other in the aisle, you loudly referred to Mr. Geoffrion as a "piece of shit". Shortly thereafter, at approximately 20:33 hours, you also made derogatory remarks about postal management over the intercom system.

Your actions as described above are in violation of the following pertinent sections of the *Employee & Labor Relations Manual* (ELM):

Section 661.53 Unacceptable Conduct, which states: "No employee will engage in criminal, dishonest, notoriously disgraceful or immoral conduct, or other conduct prejudicial to the Postal Service. Conviction of a violation of any criminal statute may be grounds for disciplinary action by the Postal Service, in addition to any other penalty pursuant to statute."

Section 666.1 Discharge of Duties, which states: "Employees are expected to discharge their assigned duties conscientiously and effectively."

Section 666.2 Behavior and Personal Habits, which states: "Employees are expected to conduct themselves during and outside of working hours in a manner which reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal personnel be honest, reliable, trustworthy, courteous, and of good character and reputation. Employees are expected to maintain satisfactory personal habits so as not to be obnoxious or offensive to other persons or to create unpleasant working conditions."

Your actions in this matter have further been found to be in violation of the following posted policy:

Joint Statement on Violence and Behavior in the Workplace, which states in pertinent part:

"In order to protect the overwhelming majority of our excellent employees, consider this a fair warning to that small majority of individuals in our employ who are inclined to express themselves through act of intimidation, threats... Each and every act or threat of violence from this date forward will elicit an immediate and firm response that may include immediate emergency placement in an off-duty status and appropriate disciplinary action, up to and including discharge from the Postal Service."

192 MAIN STREET

CENTRAL MASSACHUSETTS
PROCESSING & DISTRIBUTION CENTER




**UNITED STATES**
**POSTAL SERVICE**

July 25, 2002

**John R. Gibree  SSN: 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**
**Full Time Mail Handler**
**Tour 3/CMPDC**
**Shrewsbury, MA  01546**

In accordance with the Emergency Procedure contained in Article 16 of the National Agreement, you were placed in an off-duty status, effective July 9, 2002 and were to remain in that status until further advised.

Effective immediately, you are no longer considered in off-duty status under the provisions of Article 16.7 of the National Agreement, and thus may return to duty.  If you are unable to return to duty, you must provide administratively acceptable documentation to support your need for continued absence.

Attached are blank PS-Forms 3971 to request leave if necessary. Under separate cover, you will receive Publication 71; DOL Form WH-380.  Also enclosed for your convenience is a pre-addressed, postage-paid envelope for use in returning the documentation.

I regret to inform you that failure to present documentation to confirm your incapacity for duty, and to certify that you will in the near future be able to return to duty, may result in appropriate administrative action, including removal/separation from the Postal Service.

Should you have any questions regarding this matter, please contact the undersigned as soon as possible at 508-793-5155.

Edward J. Steinbach
Plant Manager
Central Mass P&D Center

cc: Union Stewards
      Labor Relations

Sent via First Class Mail and Certified Mail # 7000 0520 0020 9572 5682

192 MAIN STREET
SHREWSBURY, MA  01546-7060





**NATIONAL POSTAL MAILHANDLERS UNION
DIVISION OF THE LABORERS INTERNATIONAL
UNION OF NORTH AMERICA AFL-CIO LOCAL-301**

8/23/02

Mailhandler grievance #02-3115 is resolved. The 14 day suspension issued to John
Gibree on August 8, 2002 will be changed to a 14 day, time-served suspension, already
served July11, 2002 thru July 24, 2002. If the suspension is not cited in any subsequent
discipline within one year of the date of issue, the suspension will be removed from the
employee's official personnel folder on August 8, 2003. This agreement also resolves the
grievance pending at Step 3, #02-3102, regarding the July 9, 2002 Emergency Placement
of Mr. Gibree.

*Bob Broxton*

Bob Broxton
Steward, Tour 3
Branch 127
NPMHU

*Paul Gregoire*

Paul Gregoire
SDO, Tour 3
CMP&DC
USPS

*John R. Gibree*

John Gibree
Grievant





# National Postal Mailhandlers Union, Division of the Laborers' International Union of North America, AFL - CIO

## LOCAL 301

### BRANCH #127

### *Pre-Disciplinary hearing for John Gibree*
07/16/02  8:15 P.M.
#### Conducted by SDO Paul Gregoire/ via telephone

SDO Paul Gregoire contacted mail handler John Gibree via telephone and conducted the interview over the speaker phone. Mr. Gibree was on emergency placement at the time of the interview. Mr. Gibree was informed that this interview was being conducted due to the fact that further discipline was being considered in his situation. SDO Gregoire asked Mr. Gibree why SDO Gregoire should not issue further discipline. Mr. Gibree stated that it was he, that was threatened by MDO Geoffrion and that Mr. Gibree felt that this was a pure situation of harassment towards him, on the part of management.

SDO Gregoire and I asked Mr. Gibree to explain exactly what happened. Mr. Gibree stated that on Tuesday 7/09/02 he had gone to the small copier to copy some work related material. Somewhere during this time he stated that MDO Geoffrion had approached him to inform him that he had suspended some of Mr. Gibrees' clock rings for overtime on Monday 7/08/02. After this Mr. Gibree stated that he had exited the back corridor and had entered the main aisle on the work room floor. As he approached the area of time clock by the manual section, he turned to go back to the copier. At this time he stated that MDO Geoffrion must have been following close behind him because when he turned they almost collided. Mr. Gibree stated at this time there was no contact made and there was no argument that occurred. Mr. Gibree did state that shortly after that time he was walking up the aisle of the workroom floor by the administration wing heading towards time keeping. He stated that MDO Geoffrion approached him approximately half way up the aisle and stated to Mr. Gibree that he was going to knock Mr. Gibree on his ass. At this time Mr. Gibree stated that he called MDO Geoffrion a chicken shit. Mr. Gibree stated at this time that his first thought was to go to the general intercom and announce the incident, ie: call for help. He did this on the phone located at the desk in the culling section. Mr. Gibree stated it was at this time SDO Gregoire approached him and informed him to leave the building and go home. During this point of the interview SDO Gregoire asked Mr. Gibree why he did not seek out another supervisor and report the alleged threat instead of using the general intercom system. Mr. Gibree stated that using the intercom was his first thought.



I asked Mr. Gibree when did he notify the local police of the alleged threat. Mr. Gibree stated that it was after he was informed that he was on emergency placement right after using the intercom. I asked Mr. Gibree during the interview, if anyone else in management other than the parties involved had inquired of the nature of the alleged threat by MDO Geoffrion before he was sent home. Mr. Gibree stated, no, no one had. I inquired of SDO Gregoire as to what specific charges he would discipline Mr. Gibree for?  SDO Gregoire stated that it would be for accessing the intercom with out permission and causing a disruption on the work room floor. He felt this warrants a fourteen day suspension.


Anthony Spano

7·16·02

Mail Handler steward tour 3



On Tuesday July 9th, 2002 at approximately 8:00 pm I was walking by the manual primary area on route to the supervisor's office when I noticed Mr. John Gibree and MDO Armand Geoffrion in a discussion. Throughout their conversation, Mr. Gibree was loud and boisterous while Mr. Geoffrion remained calm. After being insulted and accused of lying by Mr. Gibree, Mr. Geoffrion turned and walked away saying " thank you John". Approximately 15 minutes later, I was walking by the culling area where I noticed Mr. Gibree on the telephone. He then accessed the intercom system and went on a 45 second diatribe making derogatory remarks about management and then specifically named Mr. Geoffrion, stating that he physically threatened him. After Mr. Gibree hung up the phone, I felt it incumbent upon myself to remove this individual from the workroom floor as well as from the building. I approached Mr. Gibree and told him to punch out and go home. Before I could even state the reason why I was placing him in an emergency placement off duty status, he turned and walked away ranting and raving. Mr. Gibree was obviously distraught and not in the correct mind frame to perform his preferred duty assignment (fork lift operator) or any other mail handler assignment. I felt very strongly that Mr. Gibree could be injurious to himself and or other fellow postal employees.

Tour 3 SDO

Paul Gregoire
Paul Gregoire



**Tuesday, June 08, 2004**

**SUSPENSION**

**SECTION 25 (f)**

**EMPLOYER STATEMENT**

**MASSACHUSETTS DIVISION OF EMPLOYMENT AND TRAINING**

**On**    02/18/04 Time    3:00 PM **I left a message for:**    ANN BURDETT & LARRY MIDURA

on his/her answering machine/voice mail.

**On**    Time    **I left a message with**

to have    call me.

I indicated that I needed information about the reason for the claimant's suspension in order to determine her/his

eligibility for unemployment benefits. I asked the employer to call me by    02/23/04    3:00 PM

, and indicated that if I did not hear from her/him, I would resolve the issue based on available information.

**On**    a form 261 to the employer.

**Contacts**    02/23/04 3PM SPOKE TO LARRY MIDURA

**My name is:**  Donna Clifford

from the DET. I am contacting you in order to obtain information regarding your employee,

GIBREE, JOHN

.S/he has filed a claim for unemployment benefits, and stated that s/he was suspended.

.Once I have all of the information, I will make a determination regarding eligibility for benefits.

HAS THE   1062    BEEN RETURNED ?  ○ Yes    ● No

IF NOT, REMIND THE EMPLOYER TO RETURN IT BY THE DUE DATE TO PROTECT THEIR RIGHTS AS

AN INTERESTED PARTY    go to Late 1062/1074 Template if form is late

**Why did you suspend the claimant?**    UNACCEPTABLE CONDUCT - HE STEPPED ON SUPERVISORS FOOT & REFUSED TO USE HIS SEATBELT.    *Notice Step.*

*changed To Assault*

*(never charged)*

**What date did the suspension begin?**    12/29/03

What date did or will it end?    03/1/04

**Was the claimant allowed, or will be allowed, to return to work after the suspension?**    ○ Yes    ● No

**Do you have a rule or policy that relates to the reason for this suspension?**    ● Yes    ○ No

*How I am Treated*

What is the rule or policy?    EMPLOYEES ARE EXPECTED TO DISCHARGE THEIR ASSIGNED DUTIES CONSCIENTIOUSLY & EFFECTIVELY.

What are the consequences of violating the rule or policy?    Termination

How are employees made aware of the rule or policy?    MANUAL

**What did the claimant do that was in violation of the rule or policy?**    SEE ABOVE

What has happened to other employees who have violated this rule or policy?    PROGRESSIVE DISCIPL

*↗ other employees*

**If you are a public employer, was the claimant an officer of a county, city, town, district, or the Commonwealth?**    FEDERAL

**Was the claimant indefinitely suspended because of an indictment for misconduct while in office?**    ○ Yes    ● No

**Rebuttal**    HE IS GETTING HIS FULL PAY UNTIL 03/01/04 BUT HE IS NOT WORKING. HE IS IN ADMINISTRATIVE LEAVE STATUS.

*False Statements*    *Lie*

(4)

This was sent to Fair laboer board, I never Assaulted Him. But the U.S.PS Treated me like I killed someone. My working conditions was so bad I could not even have Weng word Rights. Basically All my Rights have been Ignored. Look at Police Report and Responce Police Took Notice A.B.? To me the Police did Not believe This was A A.B.

While the claimant appealed to ECAB, he also filed a new injury claim with this Office on September 21, 2004. In this claim, the claimant again claimed an injury from second hand smoke. He stated that management must assure healthy working at all cost. The Postal Service challenged this claim as duplicative of the previous claims. The Postal Service also noted that the claimant had recently been fired for assaulting his supervisor and listed his history of previous discipline.

# SHREWSBURY POLICE DEPARTMENT INVESTIGATIVE CASE REPORT

**PLEASE PRINT**

| | | |
|---|---|---|
| 1. TIME REPORTED | M 12  D 29  Y 03   HR 16  MIN 37 | 2. UNKNOWN ☐  S M T W ☒T F S |
| | | 3. INCIDENT # 2003-1637 |

**OFFENSE**

4. OCCURRENCE

FROM: Mo. 12  Day 29  Yr. 07  Time 1515
TO: Mo.  Day  Yr.  Time

5. LOCATION OF OFFENSE (HOUSE NO., STREET, APT., NO, BUSINESS, OTHER)
Main St - Postal Facility

6. VICTIM'S NAME (LAST, FIRST, M.I., OR PROP BUSINESS NAME)
Fortunato, Joseph M.

7. OFFENSE(S)
Harassment
A & B ?

8. VICTIM'S ADDRESS (HOUSE NO., STREET, APT, NO)
92 Main St Shrewsbury

9. CITY  10. HOME PHONE

11. VICTIM'S PLACE OF EMPLOYMENT/SCHOOL
Post Office

12. BUS. PHONE
508-793-5165

**VICTIM-WITNESS**

13. WAS THERE A WITNESS TO THE CRIME?    IF NO, PLACE AN X IN THE BOX

14. INDICATE WITH PROPER CODE IN BOXES PROVIDED, PERSON'S RELATIONSHIP TO INVESTIGATION
PK-PERSON WITH KNOWLEDGE  V2 ADDITIONAL VICTIM  RP-REPORTING PERSON
W-1 WITNESS NO. 1   NI-NOT INTERVIEWED

| PERSON INTERVIEWED | AGE | HOME ADDRESS (HOUSE NO., STREET, APT) | |
|---|---|---|---|
| | | | BUS |
| | | | RES |
| | | | BUS |
| | | | RES |
| | | | BUS |
| | | | RES |

**SUSPECT**

15. CAN A SUSPECT BE NAMED?    IF SO WHY? (Put in Narrative)    IF NO, PLACE X IN THE BOX
John R. Gibree (Postal Employee)

SUSPECT NO. 1 NAME (INCLUDE ANY AKA INFO)
11 Marwood Rd
Worcester Ma   DOB- 9/8/56

SUSPECT NO. 2 NAME (INCLUDE ANY AKA INFO)    IF NO, PLACE X IN THE BOX

16. CAN A SUSPECT BE LOCATED?

SUSPECT NO. 1 CAN BE LOCATED AT   SUSPECT NO. 2 CAN BE LOCATED AT

17. CAN SUSPECT BE DESCRIBED?    IF NO, PLACE X IN THE BOX

| AGE | SEX | RACE | HT. | WT. | HAIR | EYES | BEARD ☐ MUSTACHE ☐ | COMPLEXION | AGE | SEX | RACE | HT. | WT. | HAIR | EYES | BEARD ☐ MUSTACHE ☐ | COMPLEXION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

CLOTHING AND UNUSUAL CHARACTERISTICS    CLOTHING AND UNUSUAL CHARACTERISTICS

18. CAN SUSPECT BE IDENTIFIED?    IF NO, PLACE X IN THE BOX

USING APPROPRIATE CODES (See Block 17) IN BOXES PROVIDED, INDICATE WHO CAN IDENTIFY SUSPECT
VEHICLE  VICTIM ☐  SUSPECT ☐

**VEHIC.**

19. REG. INFO.  STATE  YR.  MAKE  FURTHER DESCRIPTION OF VEHICLE

MODEL  TYPE  COLOR  INSURANCE
20. CAN SUSPECT VEHICLE BE IDENTIFIED?  IF NO, PLACE X IN BOX

**PROP.**

21. IS THE STOLEN PROPERTY TRACEABLE?/HOW? (Put in Narrative)  IF NO, PLACE X IN THE BOX

22. TYPE OF PROPERTY (Narrative)

**EVIDENCE**

23. IS THERE SIGNIFICANT PHYSICAL EVIDENCE PRESENT? IF YES, DESCRIBE IN NARRATIVE  IF NO, PLACE X IN THE BOX
Photo's taken of "Boot Print"

TYPE OF EVIDENCE (Narrative if needed)
on Victim's Foot
LOCATION

24. SHOULD EVIDENCE TECH WORK BE PERFORMED?  IF NO, PLACE X IN BOX
☐ DET. AT SCENE  ☐ COMPOSITE  ☐ PHOTOS  ☐ FINGERPRINTS

25. POINT OF ENTRY  UNK ☐  26. POINT OF EXIT  UNK ☐  27. TYPE OF INSTRUMENT/WEAPON OR FORCE USED  UNK ☐

**NARRATIVE**

28. IS THERE SIGNIFICANT M.O.? If so, place in Narrative  IF NO, PLACE X IN THE BOX
Employee of Post Office was confrontational with Supervisor (J.D.) - Aggressive and stomped on

FOR NARRATIVE, USE PRELIMINARY SUPPLEMENT REPORT. IF USED, ATTACH TO THIS REPORT.
supervisor's foot leaving a

29. DOES THIS INVOLVE DOMESTIC VIOLENCE? ☐ YES ☒ NO
boot print on Shoe. -

INVESTIGATION BY:
PATROL DIVISION ☐ OFFICER ___  DET. BUREAU ☐ OFFICER ___

STATE REASON FOR TURNING INVESTIGATION OVER TO DETECTIVE BUREAU
Report filed, possible charges to follow.

RECORD ONLY ☐  COUNSEL/RELEASE ☐  CRIMINAL ☐

| OFFICER SIGNATURE | SUPERVISOR SIGNATURE | VICTIM SIGNATURE | DATE 12/29/03 |
|---|---|---|---|

WHITE — DEPARTMENT COPY    CANARY — DETECTIVES    PINK — VICTIM/COMPLAINANT





Inspection Service
Exhibit
3 D

Label 113, July 1987

(9c)







Inspection Service
Exhibit





Inspection Service
Exhibit
3c

Label 113, July 1987

Management Demand of Record

EEO Complaint

Whistleblower

**Counselor's Inquiry**

Counselee stated that over the past five to seven years he has been working in an unhealthy and unsafe environment. He has reported the smoking in the building to management and it continues. The most recent incident was March 13, 2001, on the dock.

Author A. LeDoux, Manager, Distribution Operations, stated that Tour II employees have been given Stand-up talks on Postal Smoking Policy, posters are posted in locker rooms and through out the building stating smoking is "forbidden in the building." He further stated that the Counselee reports incidents of smoking in the men's room and on the dock but has never provided the names of any of the violator of the smoking policy. The Counselee has never given the names of violators of the postal smoking policy.

Joseph R. Freeman, Human Resource Specialist, stated that the Counselee has filled out numerous PS Forms 1769 over the years. He has reacted appropriately to each to insure the smoking policy is adhered to. He further stated the Counselee has not given him the names of the violators.

# A DECLARATION

## BY THE REPRESENTATIVES OF THE UNITED STATES OF AMERICA IN GENERAL CONGRESS ASSEMBLED

### July 4, 1776

WHEN, in the course of human events, it becomes necessary for one people to dissolve the political bands which have connected them with another, and to assume, among the powers of the earth, the separate and equal station to which the laws of nature and of nature's God entitle them, a decent respect to the opinions of mankind requires that they should declare the causes which impel them to the separation.

We hold these truths to be self-evident, that all men are created equal; that they are endowed by their Creator with certain unalienable rights; that among these, are life, liberty, and the pursuit of happiness. That, to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed; that, whenever any form of government becomes destructive of these ends, it is the right of the people to alter or to abolish it, and to institute a new government, laying its foundation on such principles, and organizing its powers in such form, as to them shall seem most likely to effect their safety and happiness. Prudence, indeed, will dictate that governments long established, should not be changed for light and transient causes; and, accordingly, all experience hath shown, that mankind are more disposed to suffer, while evils are sufferable, than to right themselves by abolishing the forms to which they are accustomed. But, when a long train of abuses and usurpations, pursuing invariably the same object, evinces a design to reduce them under absolute despotism, it is their right, it is their duty, to throw off such government, and to provide new guards for their future security. Such has been the patient sufferance of these colonies; and such is now the necessity which constrains them to alter their former systems of government. The history of the present King of Great Britain is a history of repeated injuries

and usurpations, all having, in direct object, the establishment of an absolute tyranny over these States. To prove this, let facts be submitted to a candid world:—

He has refused his assent to laws the most wholesome and necessary for the public good.

He has forbidden his governors to pass laws of immediate and pressing importance, unless suspended in their operation till his assent should be obtained; and, when so suspended, he has utterly neglected to attend to them.

He has refused to pass other laws for the accommodation of large districts of people, unless those people would relinquish the right of representation in the legislature: a right inestimable to them, and formidable to tyrants only.

He has called together legislative bodies at places unusual, uncomfortable, and distant from the depository of their public records, for the sole purpose of fatiguing them into compliance with his measures.

He has dissolved representative houses repeatedly for opposing, with manly firmness, his invasions on the rights of the people.

He has refused, for a long time after such dissolutions, to cause others to be elected; whereby the legislative powers, incapable of annihilation, have returned to the people at large for their exercise; the state remaining, in the meantime, exposed to all the danger of invasion from without, and convulsions within.

He has endeavored to prevent the population of these States; for that purpose, obstructing the laws for naturalization of foreigners; refusing to pass others to encourage their migration hither, and raising the conditions of new appropriations of lands.

He has obstructed the administration of justice, by refusing his assent to laws for establishing judiciary powers.

He has made judges dependent on his will alone, for the tenure of their offices, and the amount and payment of their salaries.

He has erected a multitude of new offices, and sent hither swarms of officers to harass our people, and eat out their substance.



## TRUST WHEN IN DISTRESS

**from Psalm 7**

O Yahweh my God, in you I find refuge.
Deliver and save me from all who harass me,
lest they tear at my throat like a lion with prey,
and drag me away with no one to rescue.

Let Yahweh judge the peoples;
judge me, O Yahweh,
as my innocence merits
and my inner integrity.

O God of all righteousness,
searcher of hearts and minds,
stamp out the wicked;
grant strength to the just.

My shield is God Most High
who saves those who obey.

I will raise thanks to Yahweh
because of God's justice,
and sing to the name of Yahweh Most High.

*Jesus experienced anguish*
*Lk 22:44; Mk 14:36) and p*
*God to be freed from it. J*
*the innocent one and that*
*enables us, when suffering*
*with confidence to that on*
*knows what suffering mea*
*We will not be abandoned*
*life is precious in God's e*

**God, you will always look wi**
on those whose hearts are ju
You judge with justice
so why need I be afraid?
Sinners dig their own pit of e
and bring upon themselves their
keep me in your love,
then I need never be afraid of

— 16 —

— 17 —

TRANSMISSION VERIFICATION REPOPT

TIME : 12/01/2005 15:37

| | |
|---|---|
| DATE,TIME | 12/01 15:26 |
| FAX NO./NAME | 16172483870 |
| DURATION | 00:11:09 |
| PAGE(S) | 25 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |