UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN GIBREE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) Civil Action No.<br>JOHN E. POTTER, POSTMASTER ) 04-40251-FDS<br>GENERAL, UNITED STATES )<br>POSTAL SERVICE, )<br>)<br>Defendant. )<br>) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, J.**

This matter involves a claim of job discrimination and retaliatory termination by a former employee of the United States Postal Service. Plaintiff John Gibree, who is proceeding *pro se*, claims, in essence, that he was improperly terminated for complaining about second-hand tobacco smoke. Defendant has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56(c). For the following reasons, defendant's motion to dismiss will granted in part and denied in part without prejudice.

**I.      Background**

The following are the facts as alleged in plaintiff's complaint and related filings. Plaintiff John Gibree, a resident of Worcester, Massachusetts, was hired by the United States Postal Service ("USPS") in 1987. At the time of his termination, he was working as a mailhandler in the USPS's Central Massachusetts Processing and Distribution Center in Shrewsbury, Massachusetts. His primary job was to operate a forklift.

At the heart of this dispute are Gibree's claimed efforts to rid the facility of second-hand

cigarette smoke, which Gibree contends was caused by employees smoking in and around the facility in violation of federal regulations. Gibree filed numerous complaints with an array of agencies and individuals, including his USPS supervisors, USPS Equal Employment Opportunity ("EEO") counselors, the Shrewsbury Board of Health, the National Postal Mailhandlers Union, the "Tobacco Control Unit," the American Civil Liberties Union of Massachusetts, and the regional office of the Occupational Health & Safety Administration ("OSHA").

Gibree contacted OSHA in December 2003. He described his telephone exchange with an OSHA representative as follows:

> I asked the [OSHA] Agent whether or not they could help me solve this workplace smoking problem. She said that she couldn't help me, that OSHA didn't have a policy on smoking. At that point, I told her that I understood how some people get frustrated with getting the 'run around.' I told her about how one of my co-workers went 'Postal' on a supervisor, where the supervisor was harassing the employee and he turned around and squished the supervisor's eyeball into her head. He got fired and went to jail.

Apparently, that agent passed along Gibree's remarks to his supervisors, who, on December 5, 2003, placed him on administrative leave until he passed a fitness-for-duty test. Gibree passed the test and returned to work December 27, 2003. Just two days later, however, he was involved in an altercation with a supervisor, Joe Fortunado. While Gibree was operating a forklift, Fortunado instructed him to wear a seatbelt in accordance with safety regulations. Gibree told him that he would not wear a seatbelt until Fortunado acted on some of the many safety suggestions Gibree had made of over the past eight to ten years. Fortunado then shut down the forklift and instructed Gibree to leave the facility. As he left, Gibree contends he accidentally stepped on Fortunado's foot, and then grabbed him to keep himself from falling.[1]

---

[1] Fortunado contended that the contact was intentional and subsequently filed a criminal complaint.

The USPS terminated Gibree's employment on January 28, 2004.[2] Plaintiff contends that his termination was in retaliation for his efforts to "achieve a healthy working environment." He asserts that the stress of working in an unhealthy environment caused depression, which was worsened by numerous alleged actions by his supervisors, including "reporting [him] to staff as a snitch" and making him "the butt of many management jokes." According to Gibree, his "disability of major depression started due to stress at the post office and continued to build over time due to mistreatment by management and union."

Following his termination, Gibree lodged complaints with the National Labor Relations Board and the Mailhandlers Union. On September 15, 2004, Gibree contacted an EEO counselor. He then apparently filed a formal complaint, which EEO interpreted as an allegation of discrimination and retaliation for prior EEO activity. On November 23, 2004, EEO dismissed Gibree's complaint because he failed to contact a counselor within 45 days of the alleged improper termination, as required by federal regulations.

Gibree filed the present complaint on December 6, 2004, against John E. Potter, the Postmaster General. Gibree did not assert a specific statutory or common-law basis for his action. Defendant moved on June 1, 2005, to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(c).

---

[2] One of the two affidavits Gibree attached to his complaint states that his employment was terminated on three different dates: December 29, 2003; January 28, 2004; and March 1, 2004. Based on the other affidavit and a third filing attached to the complaint, the Court takes this to mean that he was notified of his termination on January 28, 2004, effective on March 1, 2004.

## II. Analysis

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) serves "to test the legal sufficiency of the allegations" in the complaint. *In re Digital Equipment Corp. Securities Litigation*, 601 F. Supp. 311, 313 n.2 (D. Mass. 1984) (emphasis omitted). The Court must "assume the truth of all well-pleaded facts contained in the complaint and indulge all reasonable inferences therefrom" that fit the plaintiff's theory of liability. *Rossiter v. Potter*, 357 F.3d 26, 27 (1st Cir. 2004).

Complaints are to be construed liberally, particularly where the plaintiff is proceeding *pro se*. *See Rodi v. Southern New England School of Law*, 389 F.3d 5, 13 (1st Cir. 2004); *Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000) (explaining that "courts hold pro se pleadings to less demanding standards than those drafted by lawyers"). A claim should be dismissed pursuant to Rule 12(b)(6) "only if, when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff to relief." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45-48 (1957)).

Ordinarily, if a court considers documents outside the pleadings, a Rule 12(b)(6) motion must be converted into one for summary judgment. *See* Fed. R. Civ. P. 12(b). However, exceptions may be made "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (collecting cases).

### B. Possible Causes of Action

As noted, Mr. Gibree did not provide a specific statutory or common-law basis for his

claim.[3]  Although this deficiency certainly complicates the Court's analysis, it is not fatal.  *See Morales-Vallellanes v. Potter*, 339 F.3d 9, 14 (1st Cir. 2003) (under Fed. R. Civ. P. 8, a "complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations" (internal quotation marks and citation omitted)).

Liberally construed, plaintiff's complaint potentially raises two claims: one for retaliatory termination under the Rehabilitation Act of 1973 and another for breach of the collective bargaining agreement under the 39 U.S.C. § 1208(b)—the analogue to § 301 of the Labor Management Relations Act that grants federal district courts jurisdiction over CBA claims against the Postal Service.

    **1.**    **Rehabilitation Act of 1973**

The Court will construe Gibree's complaint, in part, as raising a claim under the Section 501 of the Rehabilitation Act of 1973, which prohibits federal employers from disability-based discrimination against employees.[4]  29 U.S.C. § 791(g); 29 C.F.R. § 1614.203(b).  Moreover, like

---

[3] As defendant noted in its motion to dismiss, Gibree checked the box on the civil cover sheet indicating that the action arose under the "Fair Labor Standards Act."  The allegations, however, clearly do not support a cause of action under that statute.

Because the heart of the complaint alleges retaliation for the reporting of alleged workplace health and safety violations, the whistleblower protections of the Occupational Safety and Heath Act would seem to be a natural substantive fit for Gibree's claim.  OSHA does not, however, provide a private right of action.  *See Pedraza v. Shell Oil Co.*, 942 F.2d 48, 52 (1st Cir. 1991).

[4] In his motion to dismiss, defendant construed the complaint as asserting a Title VII claim for employment discrimination.  Although Title VII itself bars "discrimination based on race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-16, and not claims of disability-based discrimination, the Rehabilitation Act incorporates Title VII's rights and remedies.  Thus, defendant's arguments apply in substance to the complaint as presently construed by the Court.

5

the Americans with Disabilities Act of 1990, the Rehabilitation Act requires federal employers to provide reasonable accommodations for the disabled. 29 U.S.C. §§ 791(b), (g); *see also Mazzarella v. United States Postal Service*, 849 F. Supp. 89, 94 (D. Mass.1994). Regulations promulgated under the Act also make it unlawful for a federal employer to retaliate against any individual who exercised any right granted by the statute or opposed any practice prohibited by it. 29 C.F.R. § 1614.101(b).

To establish a prima facie case of retaliation claim under the Act, Gibree must show that "(1) he engaged in protected conduct, (2) he suffered adverse employment action, and (3) there was a causal connection between his conduct and the adverse action." *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 177 (1st Cir. 2003); *Tebot v. Potter*, 345 F. Supp. 2d 61, 69 (D. Mass. 2003).

The Court will assume for present purposes that Gibree's depression qualifies as a disability within the meaning of the Act. *See Calero-Cerezo v. United States Dept. of Justice*, 355 F.3d 6, 20 (1st Cir. 2004) (recognizing "depression as a mental impairment that may constitute, at least in some circumstances, a disability under federal law" and collecting cases).[5] As noted, Gibree contends that this disability was caused, *inter alia*, by the defendant's alleged failure to provide a smoke-free work environment. As such, plaintiff's requests to enforce anti-smoking provisions can be construed as a request for a reasonable accommodation of his disability. Accordingly, these requests constitute protected conduct under the Act. *See Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003). Plaintiff further contends that those requests

---

[5] Significantly, a plaintiff "may assert [a retaliation] claim even if the underlying claim of disability fails." *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st 1997).

were the reason for his termination.[6]  Causation may be inferred when an adverse employment action follows closely after plaintiff engaged in protected activity.  *See Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 110 (1st Cir. 1988); *Costello v. Massachusetts Rehabilitation Com'n,*, 982 F. Supp. 61, 66 (D. Mass. 1997).  At this stage in the proceedings, given that Gibree is entitled to all reasonable inferences in his favor and a liberal construction of the complaint, the Court finds he has made a prima facie case of retaliation.

### a. Exhaustion of Administrative Remedies

The Rehabilitation Act, as amended, incorporates the rights, remedies, and procedures that exist under Title VII.  *See* 29 U.S.C. § 794a(a)(1).  It is well-established that a plaintiff may not initiate a claim under § 501 until he has exhausted his administrative remedies, just as in an ordinary Title VII action.[7]  *See, e.g.*, *Johnson*, 861 F.2d at 1477-78*; McGuinness v. United*

---

[6] The First Circuit has assumed, without deciding, that a request for a reasonable accommodation, without the filing of a formal complaint, can sustain a retaliation claim.  *See Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 177 (1st Cir. 2003) (construing ADA's retaliation provision 42 U.S.C. § 12203(a)); *Soileau v. Guilford of Me., Inc.,* 105 F.3d 12, 16 (1st Cir.1997).  This Court will do the same.

[7] It is not clear whether Gibree may bring this action only under § 501 of the Act, or under § 504 as well.  Section 504 bars disability-based discrimination "under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).  Some circuits have held that § 501 provides the exclusive remedy for disability discrimination in the federal workplace.  *See, e.g.*, *Rivera v. Heyman*, 157 F.3d 101, 104-05 (2d Cir. 1998); *Johnston v. Horne*, 875 F.2d 1415, 1420-21 (9th Cir 1989); *Johnson v. United States Postal Service*, 861 F.2d 1475, 1478 (10th Cir. 1988).  Others have concluded that a federal employee may bring a claim under either provision.  *See, e.g.*, *Morgan v. United States Postal Service*, 798 F.2d 1162, 1164 n.2 (8th Cir. 1986); *Torres v. Bolger*, 781 F.2d 1134, 1135 n.1 (5th Cir. 1986); *see also Smith v. United States Postal Service*, 742 F.2d 257, 262 (6th Cir. 1984).  The distinction is noteworthy, because generally administrative exhaustion is not a prerequisite to claims under § 504.  *See* 29 U.S.C. § 794a(a)(2); *Doe v. Garrett*, 903 F.2d 1455, 1460 (11th Cir. 1990) (noting "it is established, as a general matter, that Title VI—and by extension [Section 504 of the Rehabilitation Act]—does not incorporate Title VII's requirement of exhaustion of administrative remedies.").  The First Circuit has assumed, without deciding, that a federal employee may bring a claim under either provision of the Rehabilitation Act.  *See Leary v. Dalton*, 58 F.3d 748, 752 (1st Cir. 1995) (collecting cases).  However, it appears that those circuits permitting federal employees to sue under § 504 have required exhaustion of administrative remedies, just as in claims under § 501.  *See, e.g.*, *Doe*, 903 F.2d at 1460-61; *Smith*, 741 F.2d at 262.  Thus, the Court has not stacked the deck against plaintiff by construing his claim under § 501; in fact, this provision imposes, if anything, a lesser burden on plaintiff than does § 504.  *See Leary* 58 F.3d at 752 (noting that unlike § 501, § 504 may still require that the *sole* reason for adverse action be discrimination).

*States Postal Service*, 744 F.2d 1318, 1320 (7th Cir. 1984); *Smith*, 742 F.2d at 262; *see also Boyd v. United States Postal Service*, 752 F.2d 410, 412-13 (9th Cir. 1985).

The Equal Employment Opportunity Commission ("EEOC") has established clear deadlines and processes for federal employees to initiate Rehabilitation Act claims such as Gibree's. *See* 29 U.S.C. § 794a(a)(1); 42 U.S.C. § 2000e-16(b). The first required step is for aggrieved employees to contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1) (describing "[p]re-complaint processing").

A federal employee's failure to contact an EEO counselor within the prescribed period will typically "cause[] him to lose his right to pursue a later *de novo* action in court." *Roman-Martinez*, 100 F.3d at 217; *accord Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir. 1990). Because this 45-day rule is not jurisdictional, however, it is subject to equitable tolling. *See Jensen,* 912 F.2d at 520; *see also Roman-Martinez*, 100 F.3d at 220.

Where, as here, the alleged discriminatory act is employment termination, the 45-day period for contacting an EEO counselor begins to run when plaintiff had notice of the action. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (limitation period for claim of "discrete discriminatory act" begins to run on date on which act occurred); *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 49-52 (1st Cir. 1999) (filing clock begins to run upon employee's notice of adverse employment action). Plaintiff does not dispute that he presented his retaliation claim to the EEO counselor on September 15, 2004—more than seven months after he received notice of

termination—and he thus missed his 45-day window.[8]  Accordingly, the viability of Gibree's claim turns on whether there is a reason for the Court to extend (after the fact) the 45-day period and deem his EEO complaint timely.[9]

The First Circuit "has respected Title VII's temporal strictures, and, accordingly, has taken a narrow view of equitable modification in Title VII cases." *Jensen*, 912 F.2d at 521.  That reasoning, of course, applies with equal force to Rehabilitation Act cases in which the same Title VII strictures are controlling.  Moreover, Gibree bears the burden of demonstrating that tolling is justified.  *See Delaney v. Matesanz*, 264 F.3d 7, 14 (1st Cir. 2001) ("The party who seeks to invoke equitable tolling bears the burden of establishing the basis for it."); *Kwatowski v. Runyon*, 917 F. Supp 877, 885 (D. Mass. 1996).  To satisfy that burden, he must show "at the least, not only that he had no reason to be aware of his employer's improper motivation when the putative violation occurred, but also that the employer actively misled him and that he relied on the (mis)conduct to his detriment." *Jensen*, 912 F.2d at 521; *accord Earnhardt v. Puerto Rico,* 691 F.2d 69, 71 (1st Cir.1982).

In this case, Gibree has failed to provide any reason, let alone one that meets the relevant standard, for his failure to exercise his administrative remedies.  *Cf. DesRoches v. United States Postal Service*, 631 F. Supp. 1375, 1381 (D.N.H. 1986) (plaintiff's contention that he lacked knowledge of deadline for presenting claim to EEO counselor, together with allegations that USPS misconduct caused his lack of awareness, were sufficient to deny summary judgment for

---

[8] There is no allegation here of a systemic violation that might extend the period of filing.  *See Jensen*, 912 F.2d at 523.

[9] There is no dispute that Gibree filed his federal court complaint within 90 days of the dismissal of his EEO complaint, as required by 42 U.S.C. 2000e-16(c).

defendant on administrative exhaustion grounds).  He had ample time to do so; following defendant's motion to dismiss, Gibree supplemented the record with several filings consisting of more than 240 pages of documents and written explanations of the events surrounding this claim.  Not one of those documents, however, provides any explanation as to why he failed to approach an EEO counselor regarding his termination before September 15.

The fact that Gibree chose to pursue other avenues of relief does not justify tolling of the filing deadlines.  *See Int'l Union of Elec. Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 237-39 (1976) (Title VII statute of limitations not tolled by a collective-bargaining grievance procedure).  Moreover, Gibree states in his September 15 EEO pre-complaint that he had brought grievances to an EEO counselor no less than four times.  Thus, Gibree was certainly aware that the EEO was available to hear his discrimination claim.  Moreover, Gibree has not disputed defendant's claim that, based on Gibree's previous EEO proceedings, he "can be presumed to be well aware of the EEO procedural deadlines."

The mere fact that plaintiff is proceeding *pro se*, and may therefore lack familiarity with governing regulations, is insufficient, on its own, to justify tolling.  *See, e.g.*, *McFarland v. Metro-North Commuter R.R.*, 993 F. Supp. 210, 211 (S.D.N.Y. 1998).  The "'[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded' even in sympathetic circumstances." *Jensen*, 912 F.2d at 522 (quoting *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984)).  *See also National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 108 ("In the context of a request to alter the timely filing requirements of Title VII, this Court has stated that 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the

law.'").

Because plaintiff has failed to exhaust his administrative remedies, and because he has not provided the Court with any justification to toll the applicable time limits, defendant's motion for to dismiss will be granted with respect to plaintiff's claim under the Rehabilitation Act.

### 2. Breach of Collective Bargaining Agreement

Gibree further alleges that (1) the USPS breached its collective bargaining agreement and (2) that the Union breached its duty of fair representation in defending Gibree against USPS actions.

A Postal Service employee may sue in federal court for breach of the collective bargaining agreement under 39 U.S.C. § 1208(b).[10] Because the language of this statute "is identical in all relevant respects to that of § 301(a) of the Labor Management Relations Act, [29 U.S.C. § 185(a),] cases interpreting the latter apply to § 1208(b)." *Miller v. United States Postal Service*, 985 F.2d 9, 10 n.1 (1st Cir. 1993) (citing *Bowen v. USPS,* 459 U.S. 212, 232 n.2 (1983) (White, J., concurring in part and dissenting in part). Likewise, an employee may also sue his union for failing to represent him adequately—a fiduciary duty which is "implied under the scheme of the National Labor Relations Act." *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 164 (1983).

An employee may also bring a single "hybrid" claim under § 301 of the LMRA—and by extension, 39 U.S.C. § 1208(b)—that formally comprises both of the above claims: a claim

---

[10] Section 1208(b) provides: "Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy."

against the employer for breach of contract and a claim against the union for breach of its fair representation duty. *See DelCostello*, 462 U.S. at 165; *Morales-Vallellanes v. Potter*, 339 F.3d 9, 15 (1st Cir. 2003). To prevail against either a union or the USPS in such a suit, "employee plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the union." *Morales-Vallellanes*, 339 F.3d at 15 (quoting *DelCostello*, 462 U.S. at 165). Because the component claims are "inextricably interdependent," the plaintiff "may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *DelCostello*, 462 U.S. at 164, 165 (internal quotation marks omitted). Thus, at least on its face, Gibree's complaint appears to raise such a "hybrid" claim. *See Gibson v. United States Postal Service*, 380 F.3d 886, 888-89 (5th Cir. 2004); *Morales-Vallellanes*, 339 F.3d at 15.

Thus, there are three possible causes of action presented: (1) an independent claim against the union; (2) an independent claim for breach of the CBA against the USPS under 29 U.S.C. § 1208(b); and (3) a "hybrid" claim under the same statutory provision.

Because the Union is not a named defendant, the first action is not available. Rather than decide on the present limited record whether either of the remaining two causes of action can survive, the Court will grant defendant 21 days to file a supplemental brief on this matter. Gibree may, if he chooses, file a response within 14 days of the defendant's filing.

### III. <u>Conclusion</u>

For the preceding reasons, defendant's motion to dismiss is GRANTED in part as it relates to the Rehabilitation Act claim and is otherwise DENIED without prejudice to its renewal.

It is further ordered that the parties may file supplemental memoranda concerning whether

a cause of action under 29 U.S.C. § 1208(b) can survive either as a limited breach of contract claim, or a so-called "hybrid" claim as described in *Morales-Vallellanes v. Potter*, 339 F.3d 9 (1st Cit 1999).

    The memoranda shall be filed according to the following schedule:

Defendants' Memorandum to be filed on or before February 22, 2006.

Plaintiff's Memorandum to be filed on or before March 8, 2006.

**So Ordered.**

                                              /s/ F. Dennis Saylor  
                                              F. Dennis Saylor IV  
                                              United States District Judge

Dated: February 1, 2006