UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN GIBREE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 04-40251-TSH |
| ) | |
| UNITED STATES POSTAL ) | |
| SERVICE ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S PRETRIAL MEMORANDUM**

**I.   INTRODUCTION AND STATEMENT OF THE CASE.**

Plaintiff filed this civil action alleging retaliatory termination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et. seq. when his employment was terminated by defendant. Defendant moved to dismiss this claim based upon plaintiff's failure to timely exhaust his administrative remedies. The Court dismissed plaintiff's discrimination claim, but found that plaintiff's Complaint could be construed to assert a claim that the Postal Mail Handlers Union ("Union") breached its duty of fair representation and a claim that the United States Postal Service ("defendant") breached the collective bargaining agreement.

**II.   PROPOSED FINDINGS OF FACT.**

   **A.   The events that led to plaintiff's removal.**

   1.   On December 29, 2003, plaintiff was employed as a forklift operator at the defendant's Central Massachusetts Processing Facility in Shrewsbury, MA.

1

2. On that same date, plaintiff was observed by Supervisor Joseph Fortunato to be operating his forklift without using his seat belt in violation of OSHA rules.

3. After being so observed, Supervisor Fortunato approached plaintiff and instructed him to put on his seat belt.

4. Plaintiff refused to comply with his supervisor's instruction.

5. Supervisor Fortunato then informed plaintiff that he could either continue to operate the forklift using his seat belt or he could perform other duties that would not require him to operate the forklift.

6. Plaintiff became angry because he was being required to use a seat belt.

7. He dismounted his forklift, left it in the middle of the aisle and yelled at Supervisor Fortunato and cause a disturbance on the workroom floor.

8. Plaintiff was overheard at this time by three employees later informed Supervisor Fortunato that they heard plaintiff become verbally aggressive toward him.

9. Supervisor Fortunato memorialized his interviews with these three employees in a statement that he provided to the Postal Inspection Service investigator who prepared a memorandum of investigation.

10. Supervisor Fortunato instructed plaintiff to leave the facility.

11. Instead of leaving the facility as instructed, plaintiff started walking through the facility to locate Union steward, Mary Ellen Winkelman.

12. Supervisor Fortunato met plaintiff again and ordered him again to leave the postal facility.

13. After being ordered to leave the facility a second time, plaintiff appeared to be

complying by walking toward the exit.

14. Supervisor Fortunato escorted plaintiff toward the facility's exit door.

15. While plaintiff was being escorted toward that door, he suddenly stopped, looked around, and, after determining no one was watching, stomped on Supervisor Fortunato's foot.

16. Supervisor Fortunato called the local police who arrived shortly after plaintiff had left. The police interviewed Supervisor Fortunato and took several pictures of the footprint on the top of his shoe.

17. As a result of his conduct, plaintiff was placed on an emergency suspension by defendant and on January 24, 2004, Supervisor Fortunato notified plaintiff his employment was terminated for his misconduct.

### B. The Grievance and Arbitration.

18. Plaintiff's Union filed a grievance on plaintiff's behalf contesting the removal.

19. In the process of preparing the grievance, Craig Lauzon, then the local Union president, interviewed the three employees who had overheard plaintiff on the date in question.

20. All three employees informed Mr. Lauzon that they had not observed either plaintiff or Supervisor Fortunato, but overheard plaintiff being verbally aggressive toward Supervisor Fortunato.

21. Mr. Lauzon correctly determined that the three employees would undermined the plaintiff's grievance against the defendant.

22. The grievance proceeded through each step of the grievance process, but plaintiff failed to obtain the favorable outcome.

23. Despite the unfavorable result, Mr. Lauzon and the Union was diligent in their

advocacy for plaintiff throughout the grievance process.

24. The grievance was arbitrated on June 22, 2004 before Arbitrator Sarah Cannon Holden.

25. The Union was represented at the arbitration by Rene Morrissette, an official who had experience handling arbitrations.

26. The Union called four witnesses to testify: plaintiff, local Union President Lauzon, Union steward Mary Ellen Winkelman and Union Steward Frank Della Stritto.

27. While the Union argued that plaintiff was not aware of the seatbelt rule the plaintiff during testimony conceded he became angry when instructed to wear a seatbelt. The Union also argued plaintiff stepped on Supervisor Fortunato's foot accidentally. The Union also argued that the removal was procedurally defective because Supervisor Fortunato failed to obtain concurrence from a higher level supervisor prior to issuance of the termination letter.

28. In support of its contention that the plaintiff had accidentally stepped on Supervisor Fortunato's foot, the Union offered the testimony of the plaintiff and of steward Winkelman, who testified that she never observed *any* contact between the plaintiff and Supervisor Fortunato.

29. In addition, defendant argued that plaintiff's numerous prior instances of similar misconduct, in and out of the workplace, suggested that plaintiff's testimony that his contact with Supervisor Fortunato was accidental was simply not credible.

30. The evidence showed, in February 2002, plaintiff had defied another workplace instruction by verbally and physically attacking his own Union representative.

31. Manager Geoffrion also testified that in July 2002, plaintiff became angry at him

and, not only verbally abused him, but made physical contact with him which plaintiff later claimed was accidental.

      32.     Plaintiff also admitted in his own testimony that in December 2003, he made a phone call to an OSHA representative who felt so threatened by plaintiff that she contacted the Postal Inspection Service. Plaintiff testified that it was a misunderstanding.

      33.     Plaintiff also conceded in his testimony that, in June 2003, he was called by the Worcester police to get his son and that he ended up being arrested for assault and battery on a police officer.

      34.     Both parties filed post-arbitration briefs.

      35.     On September 9, 2004, Arbitrator Sarah Cannon Holden issued her decision denying the grievance and upholding plaintiff's removal. Arbitrator Holden concluded that plaintiff may not have been aware of the seat belt rule before being instructed by Supervisor Fortunato to use it, but that once so advised, "it would have been a simple matter of clicking the buckle and continuing to work. Instead, grievant challenged his supervisor, refused to use the belt, and, ultimately, attacked his supervisor."

      36.     Arbitrator Holden further found that "[t]he grievant's own testimony corroborates the position of the Postal Service that the grievant has been disruptive over a long period of time. At the hearing, the grievant showed no sign of remorse. There was no evidence to show that the Postal Service was harassing the grievant." *Id.*

      37.     Arbitrator Holden noted that, although plaintiff contended that no one, including his Union, would agree to help him out, plaintiff had been fully represented at the hearing by his Union. *Id.*

38.    Arbitrator Holden concluded that the Postal Service had just cause to remove plaintiff from his employment.

### III.    PROPOSED CONCLUSIONS OF LAW.

A.    Plaintiff Cannot Establish That The Union Breached Its Duty of Fair Representation or That the Postal Service Breached The Collective Bargaining Agreement.

Plaintiff's action is governed by 39 U.S.C. § 1208(b), the postal "analogue of section 301(a)" of the Labor Management Relations Act, 29 U.S.C. § 185.  *Morales-Vallelanes v. Potter*, 339 F.3d 9, 15 (1st Cir. 2003).  The body of law established under § 301 is controlling in § 1208(b) actions. *See, e.g., United States Postal Service v. National Association of Letter Carriers, AFL-CIO*, 839 F.2d at 150; *Abernathy v. United States Postal Service*, 740 F.2d 612, 617 (8th Cir. 1984); *Columbia Local, American Postal Workers Union, AFL-CIO v. Bolger*, 621 F.2d 615 (4th Cir. 1980); *Melendy v. United States Postal Service*, 589 F.2d 256 (7th Cir. 1978).

Plaintiff's claims for breach of employment contract are cognizable only under limited circumstances where he alleges and proves that his collective bargaining agent (Union) breached its duty of fair representation in pursuing a breach of collective bargaining agreement claim on his behalf.   These component claims are "inextricably interdependent" and plaintiff must prove both. *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 164-165  (1983). The "indispensable predicate" for an action under § 301, and therefore under 39 U.S.C. § 1208(b), for a breach of a collective bargaining agreement, is a showing that the Union violated its duty of fair representation. *United Parcel Service v. Mitchell*, 451 U.S. 56, 62 (1981).  Only after an employee exhausts remedies under the collective bargaining agreement, and shows that the

Union violated its duty of fair representation, may the employee sue the employer directly. *Hines v. Anchor Motor Freight*, 424 U.S. 554 (1976); *Vaca v. Sipes*, 386 U.S. 171 (1967).

In order to prevail on a duty of fair representation claim, an employee must prove that the Union's actions were "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. at 190. *Morales-Vallellanes,* 339 F.3d at 15. The employee must show that the Union's behavior was so far outside "a wide range of reasonableness" as to be irrational. *Airline Pilots Association v. O'Neill*, 499 U.S. 65, 67 (1991); *Morales-Vallellanes*, 339 F.3d at 16. "[S]imple negligence, ineffectiveness, or poor judgment is insufficient to establish a breach of the Union's duty . . . Rather, the Union's conduct must be 'grossly deficient' or in reckless disregard of the member's rights." *Ash v. United Parcel Service*, 800 F.2d 409, 411 (citations omitted).

Thus, in determining whether a breach of duty of fair representation has occurred, the Union's mere negligence or erroneous judgment is not actionable. *Miller v. U.S. Postal Service,* 985 F.2d 9, 12 (1st Cir. 1993) *citing, Condon v. United Steelworkers Local 2944*, 683 F.2d 590 (1st Cir. 1982). Moreover, in weighing allegations of a breach of the duty of fair representation, "[c]ourts must not substitute their own views for those of the Union" and must "allow the Union great latitude in determining the merits of an employee's grievance and the level of effort it will expend to pursue it." *Id. citing Torres-Matos v. St. Lawrence Garment Co.*, 901 F.2d 1144, 1148 (1st Cir. 1990) *and Williams v. Sea-Land Corp.,* 844 F.2d 17, 21 (1st Cir. 1988).

Applying that standard to the case at hand results in a finding that the Union did not breach its duty of fair representation in handling the grievance and arbitration of plaintiff's removal. The Union took plaintiff's grievance through all of the steps of the grievance process seeking redress for his removal and then exercised the option to appeal the matter to arbitration.

It assigned a seasoned arbitration representative who called a number of witnesses. It asserted all of the conceivable arguments it could in defense of plaintiff, arguing that the removal was procedurally defective and that plaintiff did not stomp on Supervisor Fortunato's foot, as alleged, but merely stepped on it accidentally.

Plaintiff's claim that the Union breached its duty by failing to call the alleged eyewitnesses to the stomping is without merit. Union official Lauzon interviewed these three employees and found that they did not witness the contact and only heard plaintiff being verbally aggressive toward Supervisor Fortunato. Lauzon reasonably concluded that these witnesses would not advance plaintiff's case and chose not to offer their testimony.

Similarly, plaintiff's contention that the Union was biased against him for having advanced claims of safety violations which included claims that Union officials were guilty of some of these violations, is a non-starter. Even if plaintiff did accuse Union officials of such violations and, even if they were meritorious, the Union's thorough and competent handling of his grievance and arbitration demonstrate that its alleged prejudice against plaintiff did not interfere with its representation of him in the grievance/arbitration arena. Finally, to the extent plaintiff may argue that the Union failed to object to and attempt to resist the testimony of defendant's witnesses at arbitration who testified to plaintiff's prior conduct which mirrored that which he was accused of in his removal, the Union's performance is not the type that rises to the level of a breach of the duty of fair representation, particularly where that testimony was clearly relevant and properly presented by defendant in its effort to prove that plaintiff's denial that he had stomped on Supervisor Fortunato's foot was not credible.

In conclusion, plaintiff simply cannot prove that the Union breached its duty of fair

representation in its representation of him in the grievance and arbitration challenging his removal.

  B. Assuming, *arguendo,* Plaintiff Can Prove that His Union Breached Its Duty of Fair Representation, He Cannot Prove that Defendant Breached the Collective Bargaining Agreement In Removing Him.

In order to prove that defendant breached the collective bargaining agreement in removing him from his employment, plaintiff must demonstrate that defendant did not have just cause in imposing that removal. *See Article 16.1 of the CBA.* Since plaintiff admits that he failed to follow Supervisor Fortunato's instruction to use his seat belt while operating his forklift and also concedes that instead of agreeing with the supervisor's offer to perform other duties, he got angry and verbally abusive and refused to comply with this supervisor's reasonable instruction. Even if plaintiff had not stomped on Supervisor Fortunato's foot, defendant had just cause to terminate plaintiff for his conduct.

The only factual issue in dispute is whether he stomped on Supervisor Fortunato's foot or merely stepped on it accidentally. It should be noted that this factual dispute has already been resolved in defendant's favor by an independent arbitrator in a thorough due process proceeding in which the same parties herein were before the arbitrator and were represented by experienced advocates.

Defendant maintains that the principles of collateral estoppel should apply here, but even if this Court chooses not to apply collateral estoppel, there is considerable evidence that plaintiff did stomp on Supervisor Fortunato's foot, including the fact that plaintiff was extremely angry at his supervisor, that plaintiff had already been verbally abusive toward his supervisor, and that he had engaged in similar misconduct on prior occasions both in and outside of the work place and

had, on each occasion, claimed that the physical contact was accidental. On the contrary, there was no basis to conclude that Supervisor Fortunato's claim that plaintiff stomped on his foot was not credible. This Court should find, as did Arbitrator Holden, that plaintiff did stomp on Supervisor Fortunato's foot while exiting the work place on December 29, 2003, and must conclude that there was just cause for plaintiff's removal.

### IV. CONCLUSION

In short, the Union's representation of the plaintiff during the grievance and arbitration was diligent and competent; even if the plaintiff could demonstrate the Union's representation of him was irrational and grossly negligent, the evidence shows the defendant had just cause to remove him from employment for assaulting Supervisor Fortunato.

    Respectfully submitted,

    JOHN E. POTTER, POSTMASTER GENERAL,
    UNITED STATES POSTAL SERVICE, Defendant

    By His Attorney,

    MICHAEL J. SULLIVAN
    United States Attorney

    /s/Christopher Alberto
    CHRISTOPHER ALBERTO
    Assistant U.S. Attorney
    United States Attorney's Office
    John Joseph Moakley
    United States Courthouse
    1 Courthouse Way, Suite 9200
    Boston, MA 02210
    617-748-3310

OF COUNSEL:

Andrew L. Freeman
Deputy Managing Counsel
Law Department, United States Postal Service

CERTIFICATE OF SERVICE

      I, Christopher Alberto, Assistant United States Attorney, hereby certify that this document filed through the ECF system was mailed to John R. Gibree, 11 Marwood Road, Worcester, MA 01602, by first class, postage prepaid mail, on this date.

                                                */s/ Christopher Alberto*
                                                CHRISTOPHER ALBERTO
                                                Assistant U.S. Attorney

Dated: March 2, 2007