UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN R. GIBREE,<br>   Plaintiff,<br><br>vs.<br><br>UNITED STATES POSTAL SERVICE,<br>   Defendant, | CIVIL ACTION<br>NO. 04-40251-TSH |

MEMORANDUM OF DECISION
AND
ORDER FOR JUDGEMENT
June 20, 2007

**HILLMAN, M.J.**

With the consent of the parties, this case has been referred to me for trial and entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. On March 5 and 6, 2006, a non-jury trial was held in this Case.[1]

**Nature of the Case**

John R. Gibree filed a Complaint against the United States Postal Service ("Postal Service") alleging claims for retaliatory termination under the Rehabilitation Act of 1973, and

---

[1] In his Complaint, Mr. Gibree demanded a trial by jury. On February 1, 2007, this Court issued a Pretrial Order (Docket No. 29) informing the parties that a bench trial would commence in this case on March 5, 2007. Immediately prior to the start of the trial, Mr. Gibree filed a motion renewing his request for a jury trial in which he argued that the Seventh Amendment guarantees him a right to a trial by jury. As explained in the body of this Memorandum and Decision, *infra*, Mr. Gibree is asserting a hybrid breach of contract claim against the United States Postal Service under 39 U.S.C. §1208(b). A suit against the United States Postal Service is a suit against the Federal government to which the Seventh Amendment right to a trial by jury does not apply, unless "Congress has affirmatively and unambiguously granted that right by statute". *Lehman v. Nakshian*, 453 U.S. 156, 160-61, 101 S.Ct. 2698 (1981)(no Seventh Amendment Right to trial by jury in suit against United States); *Crawford v. Runyon,* 79 F.3d 743 (8th Cir. 1996)(United States Postal Service is a federal agency to which right to trial by jury does not apply). Since Congress has not unambiguously provided for a right to trial by jury in cases brought against the United States Postal Service under Section 1208, no such right exists. *See Young v. United States Postal Service*, 869 F.2d 158 (2d Cir. 1989)(sue and be sued clause of Postal Reorganization Act does not confer right to jury trial); *Morris v. American Postal Workers Union,* 1999 WL 54110, Civ. A. No. 90-3619 (E.D.Pa. Apr. 9, 1991)(no right to trial by jury in suit brought against United States Postal Service under Section 1208). Therefore, Mr. Gibree's request for a jury trial was denied.

breach of the collective bargaining agreement under the Postal Reorganization Act, 39 U.S.C. §1208(b)[2]. *See Complaint* (Docket No. 1); *Mem. and Order on Def's Mot. Dismiss* (Docket No. 18). By Memorandum And Order On The Defendant's Motion To Dismiss (Docket No. 18), this Court (Saylor, J.) dismissed Mr. Gibree's Rehabilitation Act Claim for failure to exhaust his administrative remedies. The Court then determined that Mr. Gibree was left with two possible causes of action against the Postal Service: (1) breach of the collective bargaining agreement under Section 1208(b), or (2) a Section 301(a) "hybrid" claim (brought under Sections 1208(b)), which would encompass Mr. Gibree's claim that the Postal Service breached the collective bargaining agreement, as well as his allegations that his union, Branch 127, Local 301 of the National Postal Mail Handler's Union ("Union"), breached its duty of fair representation in representing him in proceedings involving the Postal Service.[3] *Id.*, at p. 11. By memorandum filed March 8, 2006 (Docket No. 20), Mr. Gibree informed the Court that he was asserting a hybrid claim against the Postal Service under Section 1208(b).

### Findings of Fact

At all times relevant to Mr. Gibree's claim, he was employed as an FTR Mailhandler at the Postal Service's Central Massachusetts Processing And Distribution Center ("CMP&DC") in Shrewsbury, Massachusetts. His employment with the Postal Service began on or about November 21, 1987. While employed at CMP&DC, Mr. Gibree filed numerous grievances and complaints about safety issues, including the Postal Service's alleged failure to enforce rules regarding smoking at the facility. Mr. Gibree also filed grievances and complaints concerning

---

[2]Section 1208(b), which authorizes employees to bring suit against the Postal Service for breach of the collective bargaining agreement, is the analogue of Section 301(a) of the Labor Management Relations Act, 29 U.S.C. §185, *et seq.* Consequently, cases interpreting 29 U.S.C. §301(a) are routinely applied to cases brought under 39 U.S.C. §1208(b). *See Jones v. United States Postal Service*, 462 F.Supp.2d 800, 808 & n. 6 (E.D.Mich. 2006).

[3]There is no dispute that at all relevant times, the Postal Service and the Union were bound by a collective bargaining agreement and that the Union is the exclusive bargaining representative of all postal employees belonging thereto, including employees at the Central Massachusetts Processing And Distribution Center in Shrewsbury, Massachusetts. Furthermore, although in his Complaint, Mr. Gibree alleged that the Union failed to adequately represent him in connection with his termination by the Postal Service, he never filed suit against the Union and therefore, cannot pursue an independent claim against it.

his perceived harassment by supervisors and/or other employees. In response to Mr. Gibree's grievances concerning violations of the smoking policy, supervisors would spot check the areas where no smoking was allowed, no smoking signs were posted and smoke detectors were installed in the bathrooms. When Mr. Gibree continued to assert that the smoking policy was being violated, he was asked to identify employees whom he observed violating the policy so that the Postal Service could conduct a further investigation. Mr. Gibree refused on the grounds that he was being asked to become an informant against his co-employees. Mr. Gibree was told that without such names, there was nothing further the Postal Service could do. Mr. Gibree feels that he Postal Service's response to the smoking issue, as well as the other safety concerns he raised was inadequate. Mr. Gibree also feels that the Postal Service failed to adequately investigate and/or address the fact that he was being harassed by other employees.

Prior to Mr. Gibree's dismissal, there were a number of incidents which resulted in Mr. Gibree being disciplined and/or placed on leave. On March 5, 2002, Mr. Gibree was notified that he was being suspended for fourteen days for failing to satisfactorily perform his duties as a mail handler. Specifically, on February 11, 2002, Mr. Gibree was instructed by his supervisor, Armand Geoffrion, Manager, Distribution Operations, to move some pallets; Mr. Gibree refused to do so. The Union filed a grievance on behalf of Mr. Gibree and his suspension was lifted and instead, he received a written warning.

On June 28, 2002, Mr. Gibree was notified that he was being suspended for seven days for failing to satisfactorily perform his duties as a mail handler. Specifically, he had failed to produce documentation to Mr. Geoffrion to substantiate his absence from work for stress related reasons. The Union filed a grievance on Mr. Gibree's behalf. It appears that the grievance was unsuccessful.

On July 9, 2002, Mr. Gibree was removed from the CMP&DC for having used the plant's intercom system to air grievances against management. Only supervisors were allowed to use the intercom system and then, only for work related business or emergencies. Mr. Gibree

had also bumped Mr. Geoffrion's hip and used foul language towards him. Mr. Gibree was immediately put on emergency placement off-duty status until further notice (which ended July 25, 2002) and on August 8, 2002, was issued a fourteen day suspension effective August 31, 2002. The Union filed a grievance on Mr. Gibree's behalf, and, ultimately, the grievance was resolved by the Union, Mr. Gibree and the Postal service agreeing that the fourteen day suspension would be changed to a fourteen day time served suspension.

On December 29, 2003, Mr. Gibree was operating a forklift at the CMP&DC. Joseph M. Fortunato, Jr., Supervisor, Distribution Operations, observed that Mr. Gibree was operating the forklift without a seatbelt. Mr. Fortunato approached Mr. Gibree and told him that after a recent inspection, the Occupational Safety and Health Administration ("OSHA") had instructed the Postal Service that its employees were required to wear seatbelts while operating forklifts and therefore, Mr. Gibree must put his seat belt on. When Mr. Gibree refused to wear the seatbelt, Mr. Fortunato told him that he could not operate the forklift and would be reassigned to another area. Mr. Gibree became agitated and asked if he was being thrown out of the building. Mr. Fortunato told Mr. Gibree that he either had to wear the seat belt or be assigned to another position. Mr. Gibree, speaking very loudly, continued to ask if he was being thrown out of the building. Mr. Fortunato then told Mr. Gibree to leave the building. Mr. Gibree walked away down one of the aisles. Thereafter, Mr. Fortunato and Mr. Gibree met in another aisle and started walking together, with Mr. Gibree slightly ahead of Mr. Fortunato. At some point, Mr. Gibree turned around to confront Mr. Fortunato and stepped on his foot. Based on Mr. Gibree's response to the contact, which Mr. Fortunato characterizes as a sarcastic "Oh, excuse me" and the mark that was left on his shoe by Mr. Gibree's footwear, Mr. Fortunato is convinced that Mr. Gibree deliberately stepped on his foot. Mr. Gibree states that he accidently stepped on Mr. Fortunato's foot when turning around and that his apology was genuine. Mr. Fortunato then told Mr. Gibree to leave the building.

After this incident, Mr. Fortunato filed a report with the Shrewsbury Police Department in which he stated that Mr. Gibree had confronted him and then stomped on his foot. Mr. Gibree was immediately put on emergency placement off duty status until further notice.[4] Mr. Fortunato also filed a written statement with the United States Postal Inspection Service ("Postal Inspection Service") that Mr. Gibree had verbally abused and physically assaulted him. An investigation was conducted and on January 13, 2004, the Postal Inspection Service forwarded the results of its investigation to Timothy McQuade, Plant Manager at the CMP&DC. On January 28, 2004, Mr. Gibree was notified, in writing, that as a result of his unacceptable conduct towards Mr. Fortunato, he was being terminated from his position with the Postal Service effective March 1, 2004. The Notice of Removal indicated that Mr. Gibree had violated: Section 666.1 of the Employee & Labor Relations Manual ("E&LRM") by failing to discharge his assigned duties conscientiously and effectively; Section 666.2 of the E&LRM which requires employees to maintain satisfactory personal habits and not be obnoxious or offensive to other persons or to create unpleasant working conditions; and the Postal Service's posted policy statement on violence and behavior in the workplace which imposes disciplinary measures, including dismissal, on employees who act violently or threaten others with violence. The Notice of Removal also indicated that Mr. Gibree's prior two suspensions had been considered in making the decision to terminate him.

The Union filed a grievance on Mr. Gibree's behalf. Step 1 of the grievance process, a meeting involving Mr. Gibree's Union representative, Craig Lauzon, President of Branch 127, Local 301 of the National Postal Mail Handler's Union, and a Postal Service manager, Mr. Fortunato, was held on February 2, 2004. The Union requested that Mr. Gibree be reinstated and that, at most, he receive a fourteen day suspension.

---

[4] Neither party offered a copy of the December 29, 2003 emergency placement letter into evidence. However, multiple references are made to a December 29, 2003 emergency placement letter in documents which have been admitted into evidence relating to Mr. Gibree's removal and subsequent grievance. Furthermore, there does not appear to be any dispute that Mr. Gibree received the emergency placement letter and that he was placed on off-duty status immediately following the December 29, 2003 incident with Mr. Fortunato.

The Step 1 grievance was denied "due to conduct + [zero] tolerance violation to policy". On February 5, 2004, the Union filed a Step 2 grievance. The Union argued that: (1) the discipline imposed on Mr. Gibree was defective because there was no concurring official, rather Mr. Fortunato acted unilaterally; (2) the discipline was not progressive in that Mr. Gibree's file included a warning letter and a seven day suspension and since under the collective bargaining agreement, discipline is supposed to be corrective not punitive, his conduct should have resulted in no more than a fourteen day suspension; (3) there was no assault, Mr. Gibree accidently stepped on Mr. Fortunato's foot and immediately apologized for having done so; and (4) when Mr. Gibree refused to wear his seat belt to operate the forklift, Mr. Fortunato had alternative measures he could have taken rather than ordering Mr. Gibree out of the building, especially since it was only recently (and in response to an OSHA complaint) that management had decided to enforce the seatbelt rule. Mr. Gibree's Step 2 grievance was denied and on March 1, 2004, the Union filed a Step 3 grievance on Mr. Gibree's behalf. On May 18, 2004, Mr. Gibree was informed, in writing, that his grievance was denied; this was a final decision which was subject to appeal to regional arbitration. In this decision it was determined that[5]:

1. The January 23, 2004 review and concurrence form signed by LeeAnn Dufresne, Mr. Fortunato's superior, met the concurrence requirement of the collective bargaining agreement and did not have to be included in the Notice of Removal and therefore, there was no procedural defect.

2. The collective bargaining agreement does not establish a set pattern of progressive discipline.

3. Mr. Gibree flatly refused a supervisor's order and a subsequent opportunity to comply with that order and he "stomped" on the supervisor's foot, which cannot be tolerated.

On March 25, 2004, the Union filed an appeal requesting arbitration in accordance with the collective bargaining agreement. There were two issues considered on appeal: (1) whether

---

[5] Although this decision makes reference to a Step 3 grievance meeting having taken place on April 5, 2004, in the subsequent arbitration proceedings the Union asserted that no such Step 3 grievance meeting had ever taken place and therefore, this Step 3 final decision should not be considered. Mr. Lauzon testified that it is not unusual for no Step 3 proceeding to take place; when no Step 3 proceeding takes place, the Union is obligated to timely pursue arbitration, which it did in this case.

the Postal Service had just cause to place Mr. Gibree on emergency off-duty status on December 29, 2003; and (2) whether the Postal Service had just cause to terminate Mr. Gibree's employment.  Mr. Lauzon had represented Mr. Gibree for purposes of the Step 1 and Step 2 grievance procedures and he had prepared the Step 3 appeal.  Mr. Gibree had informed Mr. Lauzon that three other employee's had witnessed the incident between he and Joe Fortunato.  However, when Mr. Lauzon interviewed the employee's identified by Mr. Gibree, they told him that they had not seen the incident; the only information that they could provide was that they heard Mr. Gibree yelling at Mr. Fortunato.  Mr. Lauzon did not feel that the employees' testimony would be helpful to Mr. Gibree, so he did not obtain statements from them to be used during the grievance process.  Since there were no witnesses to support Mr. Gibree's version of the events, Mr. Lauzon felt that he could best serve Mr. Gibree by testifying on his behalf at the arbitration. Therefore, he did not represent Mr. Gibree at the arbitration hearing.  Instead, Mr. Gibree was represented by Rene Morissette.

The arbitration hearing was held on June 22, 2004.  Following the hearing, both parties submitted closing briefs supporting their respective positions.  As to the first issue, the Union argued that Mr. Gibree had been placed on emergency off-duty status solely as a result of his failure to have worn a seat belt while operating a forklift (and not as the result of his behavior).  The Union further argued that Mr. Gibree was unaware that wearing a seatbelt had become mandatory, that the employee's had never officially been made aware of the policy, and that there were alternative corrective actions available to Mr. Fortunato and therefore, the emergency placement was without just cause.  As to the second issue, the Union argued that Mr. Gibree's termination was without just cause because Mr. Gibree had accidently stepped on Mr. Fortunato's foot and the removal process was procedurally flawed (because the signed and dated concurrence and review form was not included with the Notice of Removal, which was often, but not always, the practice at the CMP&DC).  The Union requested that the emergency placement and Mr. Gibree's termination be rescinded.

The Postal Service argued that Mr. Gibree was immediately placed on emergency off-duty status not only for refusing to wear a seatbelt, but also for his loud and disruptive behavior; had he left the building immediately and things not escalated, he probably would have been allowed back to work the next day. It was only because he stepped on Mr. Fortunato's foot that he was kept on emergency off-duty status indefinitely. The Postal Service further argued that there was just cause under the collective bargaining agreement to terminate Mr. Gibree's employment for having assaulted a supervisor, that the disciplinary action had been taken in a timely manner, that the Postal Service followed all procedural requirements and that given Mr. Gibree's employment history which included multiple incidents of loud, disruptive and insubordinate behavior and incidents where his conduct lead people to feel threatened by him, a lesser penalty was not warranted.

On September 9, 2004, the arbitrator issued a decision in which she made the following relevant findings of fact:

1. Mr. Gibree refused to put on his seat belt when ordered by Mr. Fortunato; he did so because of the perceived lack of concern by the Postal Service regarding safety and rule enforcement issues which he had raised in the past.

2. Mr. Gibree acknowledged that Mr. Fortunato had give him the option of wearing a seatbelt or moving to another assignment. He also acknowledged that he got a "bit hot". Mr. Gibree did not put on his seatbelt and did not pursue Mr. Fortunato's offer to move to another assignment.

3. Although Mr. Gibree could be excused for initially not having his seatbelt on (enforcement of the policy was relatively new), he had no justification for refusing to wear the seatbelt once he was told to do so. "Instead, [Mr. Gibree] challenged his supervisor, refused to use the belt, left his work station, and became loud and disruptive". Consequently, Mr. Fortunato was within his rights, under the collective bargaining agreement, to place Mr. Gibree on emergency off-duty status.

4. It is more likely than not that Mr. Gibree intentionally stepped on Mr. Fortunato's foot, which is serves as an additional reason for Mr. Gibree to have been removed from the facility.

5. The evidence submitted by the Postal Service as well as Mr. Gibree's own testimony establishes that he "has been a less than exemplary employee" and that he has been disruptive over a long period. Mr. Gibree's response to Mr. Fortunato's directive created an unnecessary disruption of the workplace. Furthermore, Mr. Gibree's dissatisfaction with the Postal Service's response to

       his complaints about safety issues was irrelevant and did not justify his ignoring a supervisor's directive.

6.     Although Mr. Gibree testified that no one, including his Union, would support him, he was fully represented at the hearing.

Based on the foregoing findings, the arbitrator determined that the Postal Service had just cause to place Mr. Gibree on emergency off-duty status and to issue the Notice of Removal. Therefore, the arbitrator denied Mr. Gibree's grievance.

## Discussion

Mr. Gibree has asserted a hybrid action against the Postal Service and the Union in which he asserts that he was terminated in violation of the collective bargaining agreement. Such a suit consists of a claim that the employer, in this case the Postal Service, took action against the employee in contravention of the collective bargaining agreement, and that the union representing the employee breached its duty of fair representation. In order to prevail on his claim, Mr. Gibree must establish both that 1) the Postal Service breached the collective bargaining agreement, *and* 2) the Union breached its duty of fair representation. Mr. Gibree must satisfy both prongs of this test in order to prevail against the Postal Service. *Gibson v. United States Postal Service*, 380 F.3d 886, 888-89 (5th Cir. 2004). Initially, I will address whether Mr. Gibree has established that the Union breached it duty of fair representation; I will then address whether Mr. Gibree has established that his termination by the Postal Service violated the collective bargaining agreement.

### Whether The Union Breached Its Duty Of Fair Representation

     A labor union assumes the duty of fair representation by 'seeking and acquiring the exclusive right and power to speak for a group of employees'. This duty requires a union 'to serve the interests of its members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct'.

     To prevail on a claim for breach of the duty of fair representation, a plaintiff must show that the union's actions were either 'arbitrary, discriminatory, or in bad faith'. Once a plaintiff establishes that the union acted in bad faith or in an arbitrary or discriminatory manner he must prove that the union's actions tainted the grievance procedure to the extent that the outcome was more than

9

>likely affected by the union's breach. Morever, the impact of the union's breach on the outcome of the grievance proceeding must have been substantial.

*Newby v. Potter,* 480 F.Supp.2d 991, 998 (N.D.Ohio 2007)(citation to quoted cases and internal citations omitted). In order to find the Union's actions arbitrary, this Court would have to find that "in light of the factual and legal landscape at the time of [its] actions, [its] behavior [fell] so far outside a `wide range of reasonableness' as to be irrational". *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991)(internal citations omitted). Furthermore, the union will be given latitude "to make discretionary decisions and choices, even if those judgments are ultimately wrong.". *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (1998). In order "to meet his burden of proof as to the [U]nion's breach of its duty of fair representation, [Mr. Gibree] must establish *by substantial evidence* that the [U]nion acted arbitrarily, discriminatorily or with bad faith". *Jones v. The United States Postal Service*, 462 F.Supp.2d, 800, 809 (E.D.Mich. 2006)(citing *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299, 91 S.Ct. 1909 (1971)(emphasis in original).

Mr. Gibree argues that the Union breached its fair duty of representation by[6]: failing to raise the concerns he had about work place safety issues caused by employees smoking in non-designated areas; by failing to object to the arbitrator considering his disciplinary record when ruling on his appeal; by having a representative other than Mr. Lauzon represent him at the arbitration hearing; and by not moving to vacate the arbitrator's unfavorable decision. The Postal Service suggests that in his pretrial submissions, Mr. Gibree took the position that the Union also violated its duty of fair representation by failing to have three of his fellow employees, whom he had identified as witnesses to the incident with Mr. Fortunato, testify on his behalf, and it was biased against him as the result of the numerous complaints he had made about safety violations at CMP&DC, including violations by Union representatives. Although it is not

---

[6]Mr. Gibree has never formally addressed the bases on which he claims the Union breached its duty of fair representation. Since Mr. Gibree is proceeding *pro se,* I have looked beyond his formal submissions and gleaned his arguments from various submissions, arguments to the Court and questions of the witnesses.

clear to me that Mr. Gibree made these specific arguments at trial, for purposes of this decision, I will assume he did so.

  First, Mr. Gibree's prior concerns about smoking in the work place were not relevant to his termination proceeding and therefore, the Union's failure to address such issues during the grievance procedures and Mr. Gibree's arbitration hearing was not arbitrary.[7] As to the arbitrator considering Mr. Gibree's prior disciplinary record, Mr. Lauzon could not recall whether an objection was made to the admission of Mr. Gibree's disciplinary record during the arbitration hearing. However, Mr. Lauzon testified that he never assured Mr. Gibree that his prior disciplinary record would not be considered by the arbitrator, only that the Union would object to it being considered. I find that Mr. Lauzon's testimony on this point was credible. Even if I assume that the Union failed to object to the admission of such information, there is nothing in the record to suggest that the Union failed to raise such an objection in order to harm Mr. Gibree. Additionally given that the Union was arguing that the Postal Service had violated its progressive discipline policy by not imposing a lesser sanction, it is inconceivable that the arbitrator would not have admitted evidence of past discipline imposed on Mr. Gibree. Furthermore, Section 16.10 of the collective bargaining agreement provides that: "The records of a disciplinary action against an employee shall not be considered in any subsequent disciplinary action if there has been no disciplinary action initiated against the employee for a period of two years ... ." Since the disciplinary actions in question occurred within two years of the December 29, 2003 incident, the collective bargaining agreement did not bar the arbitrator from considering them. The Union was not required to make a futile objection and its failure to do so does not constitute a reckless disregard for Mr. Gibree's rights.

---

[7] It was apparent throughout these proceedings that Mr. Gibree had issues concerning the Postal Service's alleged lack of enforcement of the smoking policy at the CMP&DC. In particular, Mr. Gibree was concerned about postal employee's smoking in non-smoking areas. However, Mr. Gibree's complaints were not ignored by the Union or the Postal Service: supervisors would spot check the areas where no smoking was allowed, no smoking signs were posted and smoke detectors were installed in the bathrooms. When Mr. Gibree continued to assert that the smoking policy was being violated, management asked him to identify the offenders so that a further investigation could be conducted. Mr. Gibree chose not to identify the offenders (he felt that he was being asked to turn in his fellow-employees, *i.e.,* be a whistle blower) and the matter went no further.

11

Mr. Gibree asserts that the Union breached its duty of fair representation by failing to call any of the employees whom he identified as having witnessed the incident between he and Mr. Fortunato. However, the three witnesses who Mr. Gibree identified to Mr. Lauzon did not see the incident, they only heard Mr. Gibree talking loudly to Mr. Fortunato. Under these circumstances, Mr. Lauzon reasonably determined that testimony of these three individuals would not assist Mr. Gibree and in fact, could hurt him and therefore, he did not obtain formal statement from them, nor did he call them to testify at any stage of the grievance procedure.

Given that Mr. Lauzon was unable to identify any witnesses to support Mr. Gibree's version of the events, his decision to testify on Mr. Gibree's behalf rather than advocate for him at the hearing was not irrational. Mr. Lauzon testified that Mr. Fortunato was inclined to stand close to people when talking to them which may have led to Mr. Gibree accidently stepping on his foot when he turned away. This was important testimony since Mr. Gibree did not have any witnesses to dispute Mr. Fortunato's version of the events. Furthermore, Mr. Gibree has not offered any evidence or proffered any argument as to how he was prejudiced by the fact that another union representative appeared for him at the arbitration hearing.

Finally, Mr. Gibree asserts that the Union breached its duty of fair representation when it didn't seek to vacate the arbitrator's decision, and when it acted in bad faith because it was biased against him. The evidence does not support Mr. Gibree's contentions. On the contrary, the Union zealously pursued Mr. Gibree's grievance throughout the three step procedure and arbitration hearing. The Union raised numerous arguments for overturning Mr. Gibree's termination and argued adamantly in support of those arguments. By all accounts, the Union representatives who advocated on Mr. Gibree's behalf at all stages of the proceedings were experienced and able advocates. Mr. Lauzon admitted that the Union made a conscious decision not to seek to vacate the arbitrator's decision, which under the terms of the collective bargaining agreement, is final and binding. Mr. Lauzon testified that because of the showing which must be made in order to overturn an arbitrator's decision in court, to his knowledge, judicial review is

sought in only 2 in 10,000 decisions, and such attempts are never successful.  Mr. Gibree did not contest or repute Mr. Lauzon's testimony concerning the success rate for overturning an arbitrator's decision in court.  Therefore, the Union had a sufficient legal rationale for not seeking judicial review of the arbitrator's decision.  Finally, there is no evidence to support Mr. Gibree's claim that the Union was biased against him or that it in any way discriminated against him by treating his grievance differently than any other employees.

For the reasons set forth above, I find that there is not a scintilla of evidence in the record that the Union acted arbitrarily in its representation of Mr. Gibree, that it discriminated against him, or that it was biased against him for any reason or otherwise acted in bad faith.  Therefore, Mr. Gibree has failed to establish that the Union breached its duty of fair representation.

As stated previously, in order to prevail on his hybrid breach of contract claim, Mr. Gibree must establish both that the Union breached its duty of fair representation and that by terminating him, the Postal Service violated the collective bargaining agreement.  Since I have found that Mr. Gibree failed to establish that the Union breached its duty of fair representation, he cannot succeed with respect to breach of contract claim against the Postal Service.  Therefore, judgment must enter for the Postal Service.  Although it is not necessary for me to address whether the Postal Service violated the collective bargaining agreement, in an abundance of caution, I will assume, *arguendo,* that the Union breached its duty of fair representation and address Mr. Gibree's claim that the Postal Service terminated him without just cause.

<u>Whether Mr. Gibree's Termination Violated The Collective Bargaining Agreement</u>

Mr. Gibree asserts that the Postal Service did not have just cause to terminate him and therefore, his termination violated the collective bargaining agreement. "When determining whether the employer breached a collective bargaining agreement, courts are required to look to the 'plain meaning of the agreement'". *Jones,* 462 F.Supp.2d at 811 (citation to quoted case omitted). In this case, the relevant provisions of the collective bargaining agreement provide as follows:

### Section 16.1 Statement of Principle

In the administration of [discipline under the agreement], a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination ... failure to perform as requested, violation of the terms of this Agreement ... .

### Section 16.7 Emergency Procedure

An employee may be immediately placed on off duty status ... by the Employer ... where the allegation involves failure to observe safety rules and regulations or ... in cases where the employee may be injurious to self or others.

Mr. Gibree was operating a forklift at the CMP&DC. As was his usual practice, he was not wearing a seatbelt. Joe Fortunato informed Mr. Gibree that after a recent inspection, OSHA had mandated that employees wear seatbelts while operating such equipment. When Mr. Gibree refused to wear the seatbelt, Joe Fortunato ordered him off the forklift. Mr. Gibree was placed on off-duty status immediately following his confrontation with Joe Fortunato. Mr. Gibree's failure to follow his supervisor's directive concerning a safety issue constituted grounds for his immediately being place on off-duty status pursuant to Section 16.7 of the Agreement. Furthermore, after refusing Joe Fortunato's directive, Mr. Gibree became extremely agitated, ultimately leading to a confrontation during which he stepped on Joe Fortunato's foot. Mr. Gibree argues that he accidently stepped on Joe Fortunato's foot. Joe Fortunato testified that in his mind, Mr. Gibree stomped on his foot intentionally. The arbitrator found that Mr. Gibree's actions were intentional. I do not find it necessary to resolve this issue. Mr. Gibree met Joe Fortunato in the hallway and regardless of whether it was accidental or intentional, Mr. Gibree, who was agitated and upset, made physical contact with Joe Fortunato. Given Mr. Gibree's emotional state, it was reasonable for Joe Fortunato to immediately place him on off-duty status on the grounds that he could be injurious to others, as permitted by Section 16.7.

Mr. Gibree argues that the Postal Service did not have just cause to terminate him as the result of this incident. I disagree. The collective bargaining agreement provides that employees can be disciplined for insubordination. While at the time Mr. Gibree began to operate the forklift

he was not aware of OSHA's recent mandate, his refusal to put the seatbelt on after being ordered to do so by Mr. Fortunato was insubordination, which constituted just cause for Mr. Gibree being disciplined[8].  Furthermore, while the collective bargaining agreement states that discipline shall be corrective rather than punitive, there is nothing in the agreement which would requires that it be imposed progressively, that is, where discipline is warranted, there is nothing in the agreement which prevents the Postal Service from terminating rather than suspending an employee who has been found to have violated a safety rule.  Additionally, given Mr. Gibree's prior disciplinary record, which, as I have previously noted, was admissible at the arbitration proceedings, the Postal Service's decision to terminate him rather than to imposes some lesser discipline was reasonable.  Therefore, I find that the Postal Service had just cause to terminate Mr. Gibree under the collective bargaining agreement.

For the reasons set forth above, judgment shall enter for the Postal Service.

## **Conclusion**

For the reasons set forth above, Judgment shall enter for the Defendant, the United States Postal Service.

/S/   Timothy S. Hillman
TIMOTHY S. HILLMAN
MAGISTRATE JUDGE

---

[8] It is clear from Mr. Gibree's testimony and his oral and written submissions to the Court that his refusal to put on a seatbelt after being instructed to do so by Joe Fortunato was, at least in part, motivated by his belief that the Postal Service had ignored his prior complaints about smoking, which he felt created a health and/or safety hazard.  However, Mr. Gibree needs to understand that his belief that the Postal Service had not acted on issues which he felt were a safety concern did not excuse him from following a direct order from his supervisor relating to a different safety issue.